

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-31-1996

# Sheridan v. DuPont & Co.

Precedential or Non-Precedential:

Docket 94-7509

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation
"Sheridan v. DuPont & Co." (1996). *1996 Decisions.* Paper 254.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/254

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

94-7509
_____

BARBARA R. SHERIDAN
Appellant

v.

E. I. DUPONT de NEMOURS AND COMPANY;
JACQUES AMBLARD

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. Civil No. 93-00046)
_____

Argued:  May 4, 1995
Before:  SLOVITER, Chief Judge, and ALITO, Circuit Judge,
and SCHWARZER, Senior District Judge*

(Opinion Filed: January 31, 1996)

_____

THOMAS S. NEUBERGER, ESQ. (Argued)
200 West Ninth Street,
Ninth Street Plaza
Wilmington, DE 19801-1646

Attorney for Appellant

RAYMOND M. RIPPLE, ESQ. (Argued)
DONNA L. GOODMAN, ESQ.
E.I. duPont de Nemours & Company
Legal Department
1007 Market Street, Dupont Building
Wilmington, DE 19880-0036

Attorneys for Appellee

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

---

OPINION OF THE COURT

---

ALITO, Circuit Judge:

Barbara Sheridan filed this action against her former employer, E.I. duPont de Nemours & Co., Inc. ("duPont"), and a duPont supervisory employee, Jacques Amblard, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-l et seq. She asserted several different claims for sex discrimination and unlawful retaliation. Before trial, the district court granted the defendants' motion in limine to exclude certain evidence. During trial, the court dismissed the claims against Amblard on the ground that an employee cannot be sued under Title VII. The jury subsequently returned a verdict in favor of Sheridan and against duPont on her constructive discharge claim, but the jury found for duPont on Sheridan's remaining claims. The district court then granted duPont's motion for judgment as a matter of law (and in the alternative for a new trial) on the constructive discharge claim.

Following the great weight of the federal appellate decisions concerning employee liability under Title VII, the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq., we affirm the dismissal of the claims against Amblard. Because we are bound by our court's decision in Fuentes v. Perskie, 32

2

F.3d 759 (3d Cir. 1994), and subsequent decisions following Fuentes, we reverse the entry of judgment as a matter of law on the constructive discharge claim against duPont, but we affirm the granting of a new trial. We also hold that the district court did not err in its ruling on duPont's motion in limine.

I.

Barbara Sheridan began working for duPont in 1979 as a part-time waitress in the Hotel duPont. Sheridan v. E.I. duPont de Nemours and Co., No. 93-46 (D. Del. March 28, 1994) ("Sheridan I") at 2. She was subsequently promoted to hostess in the Lobby Lounge, group leader in the Lobby Lounge, and captain in the Brandywine Room restaurant. Id. at 2-3. In May 1989, she was transferred to the Green Room restaurant and was promoted to head captain of the breakfast and lunch shifts. In this capacity, she reported to Ed Barba, the Green Room restaurant manager. Barba, in turn, reported to Nicholas Waller, who managed all the hotel's restaurants. Id. at 3.

Initially, Sheridan received good employment reviews. Her 1990 performance review rated her overall performance as "very good," which was the second highest possible rating. App. 197. She received the highest possible rating in the categories of interpersonal relationships, planning, and problem solving. Id. Her lowest marks, in the categories of oral and written communication and attendance, were respectively "good" and "satisfactory." Id. The review summarized her strengths and weaknesses as follows:

3

Very good guest relations, organized. As a
team player, strengthening is needed to
improve the overall relationship with the
rest of the operation. . . . Since May of
1989, Barbara's persistence has paid off by
guest loyalty, staff does not call off sick,
and overall very good morale from the support
team.

App. 198.

Sheridan also received several awards and merit
increases. In May 1990, she received a $948 yearly merit
increase. She also won a $1000 accomplishment award in December
of that year. App. 151. The letter that informed her of this
award stated:

[t]he enthusiasm you portray in greeting
customers and providing them service is
outstanding . . . . [Y]ou project an image
of quality, service and commitment. . . .
Your success in creating an environment in
which high quality customer service
flourishes is evident by the team spirit of
your staff. Again, congratulations for this
well-deserved award and thank you for being a
role model and a true ambassador for the
company.

Id. While other employees received awards for $200 to $500,
Sheridan was the only restaurant employee to receive a $1000
award. App. 287. The next month, she was chosen to appear in a
company video, and in February 1991 she received another merit
raise of $1188 per year. App. 733-34, 740-41.

DuPont claims that Sheridan's performance began to
deteriorate in early 1991. In February 1991, Ed Barba met with

4

Sheridan and discussed various corrective measures. App. 228. Two of these measures were maintaining an accurate count sheet to insure a fair distribution of "covers" (i.e., tips received from the tables) and ending her use of the Green Room bar for grooming and smoking. Id. Despite this meeting, Barba later saw Sheridan putting on makeup and smoking in the Green Room bar. App. 229, 305h.

According to Nicholas Waller, he met with Sheridan in the summer of 1991 to discuss "numerous complaints" about her treatment of Green Room employees. App. 960. Waller testified that employees had complained that Sheridan had asked them to perform personal services, such as parking her car, giving her a wake-up call, and taking personal mail to the post office. App. 963. These employees allegedly told Waller that those who helped her with these personal tasks were favored with more "covers." Id. Sheridan, however, disputed Waller's recollection of this meeting. Sheridan points to Barba's testimony that he was unaware of any employee complaints regarding "covers" between February and September 1991. App. 298. She also observed that, despite the alleged complaints, she received another promotion and raise on October 1, 1991. App. 142.

During the summer and fall of 1991, the hotel streamlined its operating structure. Sheridan I at 5. As part of this reorganization, the hotel eliminated the managers of the individual restaurants and hired a single new manager for all the restaurants. Id. Sheridan applied for this new position, but the hotel selected Jeff Maisel. Id. Sheridan felt that she was

5

qualified for this position and that she was not promoted because of her sex.  On at least three occasions, she complained about this alleged discrimination to Jacques Amblard, the hotel general manager.  Id. at 5-6.

On October 17, 1991, Maisel met with Sheridan to discuss her alleged unfairness in the distribution of "covers," her tardiness, and her continued disregard for the hotel's grooming policy.  App. 206, 885.  Subsequent to this meeting, duPont claims that the following infractions were recorded:

Oct. 20:  Sheridan was 45 minutes late and violated grooming policy.

Oct. 22:  Sheridan was 25 minutes late.

Oct. 23:  Sheridan was 20 minutes late.

Nov.  3:  Sheridan was 17 minutes late and violated grooming policy.

Nov.  3:  During a staff meeting, Sheridan left premises and was observed with another employee in a company van.

Nov. 7.  Sheridan was eating and smoking in Green Room bar during service hours.

App. 206.

Allegedly because of these continued infractions, Maisel placed Sheridan on probation on November 10, 1991.  Maisel told her that in order to be taken off probation, she would have to report to work on time, follow the hotel's grooming and smoking policies, and stay in her assigned work area.  App. 207.  Maisel informed her that further infractions or instances of poor performance could result in termination.  App. 208.

6

Other incidents allegedly took place while Sheridan was on probation. When Joe Marshall, the room and service head captain, attended her daily staff meeting one day in February 1992, Sheridan told him to "leave her meeting," App. 219, and according to Maisel, who was present, Sheridan was quite rude. Id. Later, Sheridan was asked to work on a Sunday, but she initially refused. When told that she was required to report, she agreed but stated that "after 13 years she deserved to work Monday-Friday." App. 220.

In late February, the hotel began to investigate Sheridan for giving complimentary drinks without ringing up complimentary checks, as hotel policy required. App. 221. At trial, duPont offered evidence that Sheridan had improperly given away large quantities of complimentary drinks, as well as food. According to a supervisor who participated in the investigation, the investigation received "rather consistent feedback from the employees of the restaurant" that Sheridan "comped liquor and [did] not properly record[] it." App. 1159. An internal duPont document memorialized alleged statements by numerous co-workers, male and female, to the effect that Sheridan "comped" beverages and food without recording that this was being done. App. 222-226. The most damaging evidence came from a bartender, James Dougherty, who stated that he had kept a daily record of the drinks that Sheridan had improperly "comped," and that the total for the period from November 1, 1991, to February 18, 1992, was $921.75. Dougherty testified that his dates were "about 98-percent accurate." App. 688. There was evidence, however, that

7

Sheridan was on jury duty or was not scheduled to work on some of the days in question.

After the investigation was completed, Maisel and others met with Charles Beinkampen, the director of hospitality, to determine what to do about Sheridan, and they decided to reassign her to a non-supervisory position that did not involve the handling of cash. App. 910, 1160. The hotel offered her the positions of front desk representative, health spa attendant, or banquet server. She was offered these positions without a reduction in pay. App. 910. While the hotel also claimed that she would be eligible for promotion and raises in any of these positions, Sheridan offered conflicting evidence. Rather than accepting reassignment, Sheridan resigned in April 1992.

Sheridan subsequently filed suit against duPont and Amblard, asserting three violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. Count I of her complaint claimed that the hotel had refused to promote her to manager of restaurants because of her sex. App. 82-83. Count II charged that she had been placed on probation and that other disciplinary actions had been taken against her in retaliation for her complaints about the hotel's failure to promote her on account of her sex. App. 83. Count III alleged that the hotel had created intolerable working conditions that resulted in her constructive discharge. App. 83-84.

The district court denied the defendants' motion for summary judgment, holding, among other things, that the evidence in the summary judgment record, if believed, was sufficient to

8

show that Sheridan had been constructively discharged. App. 68–69. The court granted in part the defendants' motion in limine to exclude certain testimony by Sheridan and two other witnesses. The court also ruled that the jury would serve as the finder of fact for the claims based on conduct that occurred after November 21, 1991, the date of the enactment of the Civil Rights Act of 1991, P.L. 102–166, 105 Stat. 1071 (1991), which granted a right to a jury trial on Title VII intentional discrimination claims for which compensatory or punitive damages are sought. The court ruled that the jury would serve in an advisory capacity for the claims based on events that occurred before that date. Thus, the court ruled that the jury would return advisory verdicts with respect to Count I (failure to promote) and those alleged retaliatory acts (Count II) that occurred before November 21, 1991. The court ruled that the jury would serve as the finder of fact with respect to the remaining alleged retaliatory acts and with respect to Count III (constructive discharge). During trial, the court dismissed the claims against Amblard, holding that individual employees are not liable under Title VII.

The jury returned special interrogatories. With respect to Count I (failure to promote), the jury found that Sheridan was not qualified for the job of manager of restaurants. App. 31. With respect to Count II (retaliation), the jury found that the defendants' actions both before and after November 21 were not taken in retaliation for Sheridan's complaints about the defendants' failure to promote her. App. 32. However, on Count III (constructive discharge), the jury found in favor of Sheridan

9

and awarded her $17,500 in compensatory damages, exclusive of lost wages.[0] App. 33. The court adopted as its own the jury's findings with respect to the conduct alleged in counts I and II that took place before November 21.

Both parties then moved for judgment as a matter of law or in the alternative for a new trial. The court granted duPont's motion for judgment as a matter of law because it found that the evidence was insufficient to allow a reasonable jury to conclude that sex played a determinative role in Sheridan's constructive discharge. Sheridan v. E.I. duPont de Nemours and Co., No. 93-46 (D. Del. July 14, 1994) ("Sheridan II"). The court did not dispute the fact that Sheridan had established a prima facie case, and the court stated that it was "willing to accept that the jury rejected the defense witnesses' claims that the investigation into plaintiff's `comping' activities was legitimate." Sheridan II at 9. But the court added: "Having accepted that proposition . . ., the Court is still left searching the record for evidence that gender played a determinative role[0] in defendant's conduct." Id.

[0]

The court calculated Sheridan's lost wages to be $51,072. Sheridan v. E.I. duPont de Nemours and Co., No. 93-46 (D. Del. May 20, 1994). However, the jury found that Sheridan had failed to mitigate these damages in the amount of $33,000. The court thus awarded her the difference -- $18,072 -- in addition to six months of front pay in the amount of $12,768. Id. at 8.
[0]This case was tried prior to our decision in Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir. 1995) (in banc), in which we held that a plaintiff in an Age Discrimination in Employment Act case need show only that age was a determinative cause (as opposed to the sole cause) of the challenged action. Relying on our prior decision in Griffiths v. CIGNA, 988 F.2d 457 (3d Cir.), cert. denied, 114 S. Ct. 186 (1993), the district court in this case

II.

A. 1. We first consider Sheridan's argument that the district court erred in granting duPont's motion for judgment as a matter of law. With respect to this question, we exercise plenary review. Seman v. Coplay Cement Co., 26 F.3d 428, 431 (3d Cir. 1994). "Such a motion should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993) (citation omitted). "Although judgment as a matter of law should be granted sparingly, a scintilla of evidence is not enough to sustain a verdict of liability. `The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.'" Id. (citation omitted) (quoting Patzig v. O'Neil, 577 F.2d 841, 846 (3d Cir. 1978)).

2. We begin by considering duPont's argument that the evidence was insufficient to show that Sheridan was constructively discharged. Although the district court did not grant judgment as a matter of law on this basis, duPont argues in

---

instructed the jury that it had to find that Sheridan's gender was the sole cause of her constructive discharge, and the jury apparently found that this higher standard had been met. But in granting duPont's motion for judgment as a matter of law the district court held that the evidence of sex discrimination was insufficient even under the lesser Miller standard.

effect that we should affirm the district court on this alternative ground.

In Goss v. Exxon Office Systems Co., 747 F.2d 885, 887-88 (3d Cir. 1984), our court recognized the concept of "constructive discharge" for Title VII purposes.  As we observed, "[c]lassifying a termination as a constructive discharge rather than a voluntary quit has significant ramifications with resect to the scope of relief."  Id. at 887.  Noting that some courts of appeals had apparently "required a finding that the discrimination complained of amounted to an intentional course of conduct calculated to force the victim's resignation," we rejected this approach and adopted "an objective standard" requiring a finding that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign."  Id. at 887-88.  We have applied this test in subsequent cases.  See, e.g., Clowes v. Allegheny Valley Hospital, 991 F.2d 1159 (3d Cir.), cert. denied, 114 S. Ct. 441 (1993); Gray v. York Newspapers, Inc., 957 F.2d 1070 (3d Cir. 1992); Levendos v. Stern Entertainment, Inc., 860 F.2d 1227 (3d Cir. 1988).  We are bound to apply this standard here.

Applying the Goss test and our subsequent precedents, we agree with the district court that there was adequate evidence to establish a constructive discharge in this case.  Sheridan offered evidence that, when viewed in the light most favorable to her, would support a finding that Dougherty's evidence was fabricated.  Moreover, Sheridan's situation was aggravated by the

12

fact that most of her staff knew about the investigation and might interpret her acceptance of a transfer as an acknowledgment of guilt. Sheridan also presented evidence from which a reasonable trier of fact could infer that the new positions offered to her would have represented demotions and that she would have effectively lost the opportunity for promotion or pay raises. Taken as a whole, the evidence of constructive discharge was sufficient.

3. We thus turn to the question whether, as the district could held, there was insufficient evidence under St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742 (1993), to show that Sheridan's gender was a determinative cause of the constructive discharge. As Sheridan argues, it appears that she made out a prima facie case of gender discrimination by showing (a) that she is a woman, (b) that she was qualified for the position of head captain, (c) that she was constructively discharged, and (d) that she was replaced by a man. See, e.g., Waldron v. SL Industries, Inc., 56 F.3d 491, 494 (3d Cir. 1995). Under Hicks, Sheridan contends, "[t]hat prima facie showing, coupled with the jury's ability to find that the reason offered [by duPont] was a pretext, permitted the jury to find that sex discrimination had occurred." Appellant's Br. at 27 (footnote omitted).

In Hicks, the plaintiff claimed that he had been demoted and discharged because of race. He established a prima facie case, the employer offered legitimate reasons for the demotion and discharge, and the district court, sitting as the

13

trier of fact, found the employer's reasons to be pretextual.

Hicks v. St. Mary's Honor Center, 756 F. Supp. 1244, 1251 (E.D.

Mo. 1991).  The court noted, however, that the plaintiff bore the

ultimate burden of proving that race was a determinative factor.

Id.  Finding that the plaintiff had failed to prove that the

employer's conduct was racially rather than personally motivated,

the court found in favor of the employer.  Id. at 1252.

The court of appeals reversed, stating that "[o]nce

plaintiff proved all of defendants' proffered reasons for the

adverse employment actions to be pretextual, plaintiff was

entitled to judgment as a matter of law. . . .  No additional

proof of discrimination is required."  Hicks v. St. Mary's Honor

Center, 970 F.2d 487, 492-93 (8th Cir. 1992).  Thus, the court of

appeals directed the district court to enter judgment in favor of

the plaintiff.  Id. at 493.

The Supreme Court granted certiorari to determine

whether the factfinder's rejection of the employer's proffered

reasons mandated a finding for the plaintiff.  Hicks, 113 S. Ct.

at 2745.  The Court began its analysis with a review of the

burden-shifting scheme established in McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973).  Under this scheme, the establishment

of a prima facie case creates a presumption that the employer

unlawfully discriminated against the employee.  Hicks, 113 S. Ct.

at 2747.  To overcome this presumption, the employer must

"`clearly set forth, through the introduction of admissible

evidence,' reasons for its actions which, if believed by the

trier of fact, would support a finding that unlawful

14

discrimination was not the cause of the employment action."  Id.
at 2747 (quoting Texas Dept. of Community Affairs v. Burdine, 450
U.S. 248, 254-55 & n.8 (1981)).  Once the employer satisfies this
burden, the presumption raised by the prima facie case is
"rebutted" and "drops from the case."  Id.

The Court emphasized that once the presumption was
rebutted, the plaintiff had to carry the ultimate burden of
proving intentional discrimination at trial.  The Court wrote:

> It is important to note . . . that although
> the McDonnell Douglas presumption shifts the
> burden of production to the defendant, "[t]he
> ultimate burden of persuading the trier of
> fact that the defendant intentionally
> discriminated against the plaintiff remains
> at all times with the plaintiff."

Hicks, 113 S. Ct. at 2747 (quoting Burdine, 450 U.S. at 253). The
Court continued:

> The defendant's "production" (whatever its
> persuasive effect) having been made, the
> trier of fact proceeds to decide the ultimate
> question: whether plaintiff has proven "that
> the defendant intentionally discriminated
> against [him]" because of his race.

Hicks, 113 S. Ct. at 2749 (quoting Burdine, 450 U.S. at 253). The
Court thus held that rejection of the defendant's proffered
reasons does not compel judgment for the plaintiff.  Id.

Hicks' implications when the defendant moves for
summary judgment or judgment as a matter of law are less clear.
Some courts of appeals have held that under Hicks a plaintiff
will not necessarily survive summary judgment or judgment as a
matter of law simply because the evidence is sufficient to permit
a rational factfinder to disbelieve the employer's proffered

15

reasons.  E.g., Rhodes v. Guiberson Oil Tools, 39 F.3d 537 (5th Cir. 1994), reh'g in banc granted, 49 F.3d 127 (5th Cir. 1995); Woods v. Friction Materials, Inc., 30 F.3d 255, 260-61 n.3 (1st Cir. 1994); Nelson v. Boatmen's Bancshares, Inc., 26 F.3d 796, 801 (8th Cir. 1994); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842-43 (1st Cir. 1993), cert. denied, 114 S. Ct. 1398 (1994).  However, other courts of appeals have disagreed.  E.g., Collier v. The Budd Company, 66 F.3d 886, 893 n.11 (7th Cir. 1995); EEOC v. Ethan Allen, Inc., 44 F.3d 116, 120 (2d Cir. 1994); Washington v. Garrett, 10 F.3d 1421, 1433 (9th Cir. 1993). Cf. Barbour v. Merrill, 48 F.3d 1270, 1277 (D.C. Cir. 1995), cert. granted on other ground, --- S. Ct. ---, 64 U.S.L.W. 3068 (1/19/96); id. at 1281 (statement of Williams, J., concurring in denial of rehearing in banc).

Our court is among those in the latter group.  Relying on the statement in Hicks that the "rejection of the defendant's proffered reasons, will permit the trier of fact to infer the ultimate fact of intentional discrimination," 113 S. Ct. 2749, our court has taken the position that "`if the plaintiff has pointed to evidence sufficient[] to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case.'"  Waldron, 56 F.3d at 495; (quoting Fuentes, 32 F.3d at 764) (brackets in Waldron).  See also Brewer v. Quaker State Oil Refining Corp., --- F.3d ---, 1995 WL 737890 (3d Cir. Dec. 14, 1995); Sempier v. Johnson &

16

<u>Higgins</u>, 45 F.3d 724, 731 (3d Cir.), <u>cert. denied</u>, 115 S. Ct. 2611 (1995).  We are compelled to follow these precedents here.

Although these prior cases concerned motions for summary judgment rather than motions for judgment as a matter of law, we cannot distinguish them on that basis.  The legal standard applied to a motion for summary judgment mirrors that applied to a judgment as a matter of law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-51 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  It would make no sense to allow a plaintiff to defeat summary judgment and proceed to trial if the plaintiff's evidence could not sustain a judgment in his or her favor.

In this case, as the district court recognized, a rational trier of fact could have found that duPont's proffered reasons for the constructive termination were pretextual. We are therefore required under our court's precedents to reverse the entry of judgment as a matter of law in favor of duPont.

B.  While we are bound to follow our court's prior interpretation of <u>Hicks</u> and while we acknowledge that that interpretation finds support in language in the <u>Hicks</u> opinion,[0] we

---

[0]<u>Hicks</u> stated:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.  Thus, rejection of the defendant's proffered reasons, will permit the trier of fact to infer the ultimate fact of intentional discrimination,[4] and the Court of Appeals was correct when it

17

question whether that interpretation is consistent with two of the fundamental principles on which <u>Hicks</u> rests.

The first of these is that, under the <u>McDonnell Douglas</u> scheme, the ultimate burden of persuasion rests at all times with the plaintiff. See <u>Hicks</u>, 113 S. Ct. at 2747. The second is that the "presumption" of discrimination that is created when the plaintiff makes out the elements of a prima facie case is governed by the "bursting bubble" theory. Under this theory,

> a presumption disappears when sufficient counterproof is offered. The trier may still find the presumed fact, but only if the natural probative force of the basic facts that brought the presumption into play is sufficient to support such a finding (or the evidence as a whole supports it). Otherwise, the presumed fact may not be found, and the presumption does not protect this possibility.

---

> noted that, upon such rejection, "[n]o additional proof of discrimination is required."

---

> **4.** Contrary to the dissent's confusion-producing analysis, post, at 2761–2762, there is nothing whatever inconsistent between this statement and our later statements that (1) the plaintiff must show "both that the reason was false, and that discrimination was the real reason," <u>infra</u>, at 2752, and (2) "it is not enough . . . to disbelieve the employer," <u>infra</u>, at 2754. Even though (as we say here) rejection of the defendant's proffered reasons is enough at law to sustain a finding of discrimination, there must be a finding of discrimination.

113 S. Ct. at 2749 & n.4.

18

1 Christopher B. Mueller & Laird C. Kirkpatrick, <u>Federal Evidence</u>, § 71 at 334 (1994); <u>see also</u>, <u>e.g.</u>, 2 <u>McCormick on Evidence</u>, § 344 at 462-63 (4th ed. 1992).[0]

From these principles, it seems to follow that once a defendant satisfies its production burden and the <u>McDonnell Douglas</u> presumption "bursts," a court should no longer accord that framework or its elements any special significance but should instead focus directly on the central issue in the case -- intentional discrimination. Thus, in deciding whether a defendant is entitled to summary judgment or judgment as a matter of law, the court should focus directly on the question whether there is sufficient evidence in the record to persuade a reasonable factfinder that intentional discrimination on the

---

[0]That <u>Hicks</u> regards the <u>McDonnell Douglas</u> presumption as a "bursting bubble" presumption is shown by the following passages:

> "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted," <u>Burdine</u>, 450 U.S. at 255, and "<u>drops from the case</u>," <u>id.</u> at 255 n.10.

113 S. Ct. at 2747 (emphasis added).

> If . . . the defendant has succeeded in carrying its burden of production, the <u>McDonnell Douglas</u> framework -- with its presumptions and burdens -- <u>is no longer relevant</u>. . . . The presumption, having fulfilled its role of forcing the defendant to come forward with some response, <u>simply drops out of the picture</u>. [<u>Burdine</u>, 450 U.S.] at 255.

<u>Id.</u> at 2749 (emphasis added). <u>See also</u> <u>McKenna v. Pacific Rail Service</u>, 32 F.3d 820, 829 (3d Cir. 1994); <u>Gomez v. Allegheny Health Services, Inc.</u>, 71 F.3d 1079 (3d Cir. 1995).

19

ground alleged by the plaintiff was a determinative cause of the challenged employment action.  This approach, which focuses directly on the question of intentional discrimination, rather than continuing to view the record through the lens of McDonnell Douglas, appears to be what the Supreme Court had in mind when it said in Hicks that after the defendant satisfies its burden of production "the McDonnell Douglas framework -- with its presumptions and burdens -- is no longer relevant" and should not be "resurrect[ed]."  113 S. Ct. at 2749.

Our court, however, has outlined a different approach. Instead of recognizing that the McDonnell Douglas framework is "no longer relevant" once the defendant has met its production burden, our approach continues to accord a special place to a central element of that framework -- the defendant's proffered explanation.  According to our cases, a plaintiff at this stage may defeat a summary judgment motion "by either (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes, 32 F.3d at 764 (emphasis in original).  If the plaintiff relies on the first method, our cases require the use of a complicated standard for determining whether the plaintiff's reasons have been sufficiently discredited.  Under this standard, a plaintiff cannot defeat summary judgment "simply by arguing that the factfinder need not believe the defendant's proffered legitimate explanations," but the plaintiff need not "adduce evidence

20

directly contradicting the defendant's proffered legitimate explanations." Id. at 764. "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them `unworthy of credence.'" Id. at 765 (citation omitted). "[T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken," but "[o]f course, a decision foolish, imprudent, or incompetent by comparison to the employer's usual mode of operation can render it implausible, inconsistent, contradictory, or weak." Id. at 765 & n.8. Moreover, when the employer asserts that the challenged action was taken for several reasons, the evidence "must allow a factfinder reasonably to infer that each of the employer's proffered nondiscriminatory reasons . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action." Id. (citations omitted). But "[i]f the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder." Id. at 764 n.7.

Although elaborate, Fuentes' discussion of proof that tends to discredit the defendant's reason(s) still does not fully capture the relationship between such proof and the plaintiff's ultimate burden of establishing intentional discrimination. As we will try to show below, the degree to which evidence discrediting an employer's explanation tends to show

21

discrimination on the ground alleged by the plaintiff depends on a number of other factors that will vary from case to case. Accordingly, we believe that, once the defendant in a McDonnell Douglas case has shouldered the production burden, the court, in ruling on a defense motion for summary judgment or judgment as a matter of law, should inquire directly whether, based on all of the evidence in the record when viewed in the light most favorable to the plaintiff, a reasonable trier of fact could find that discrimination on the ground alleged was, more likely than not, a determinative cause of the action at issue. This inquiry will require an assessment of four categories of evidence.

First, there is the inference of discrimination that naturally arises from the elements of the prima facie case. The strength of this inference, however, will vary from case to case. In some cases, it will be substantial. (An example is the McDonnell Douglas case itself, in which a black man had engaged in a civil rights protest against the employer who denied him a position in 1964 in favor of a white applicant.) In other cases, however, the inference of discrimination that naturally arises from the elements of the prima facie case will be weak. (An example is the age discrimination case in which one middle-aged person is hired, promoted, etc., instead of another somewhat older middle-aged person. See, e.g., Barber v. CSX Distribution Services, 68 F.3d 694 (3d Cir. 1995).) We think that it is clear that the inference of discrimination naturally arising from the elements of a prima facie case will not always be enough to take a plaintiff to trial or to sustain a plaintiff's verdict.

22

Second, there is the inference of discrimination that may often be drawn from the ruling out of the employer's proffered reason(s). The degree to which such an inference is justified, however, is inversely proportional to the degree to which the record contains evidence of a third possible cause for the challenged employment action. For example, if it is certain that an employee was discharged for either reason "a" or reason "b" and no other, and if reason "b" can be ruled out, then obviously it may be inferred that the real reason for the discharge was "a." But if an employee was discharged for either reason "a," reason "b," or reason "c," then ruling out reason "b" does not permit an inference that reason "a" was the real reason.

Cases in which the record contains strong evidence of a third explanation for the challenged action are by no means unknown. See generally Miller v. CIGNA Corp., 47 F.3d 586, 597 (3d Cir. 1995) (in banc) (trier of fact may conclude that adverse employment action "was taken for a reason other than the reasons urged by the parties"). Perhaps the clearest of these cases are those in which the plaintiff challenges a single adverse employment action based on two or more alternative grounds. For example, an employee may claim that he or she did not get a promotion (1) because of gender and (2) because of handicap. If the record in such a case contains strong evidence of handicap discrimination, rejection of the employer's proffered reason (let us say inferior qualifications) will not by itself permit an inference that the employer's true reason was gender discrimination.

23

The degree to which a trier of fact can reasonably conclude that there was discrimination on the ground claimed by the plaintiff also depends upon the degree to which the trier of fact can reasonably reject the employer's reason(s). (It is important to bear in mind that acceptance or rejection of an employer's reasons need not be an all-or-nothing proposition.) The evidence in a particular case may be such as to justify only a marginal or partial disbelief or belief of the employer's reason(s). For example, a trier of fact might be justified in believing that it is more probable than not (but barely so) that the employer's explanation is false. Or, a trier of fact might be justified in believing that it is more probable than not (but barely so) that the employer's explanation is true. In addition, a trier of fact might be justified in believing that the reason asserted by the employer was not the sole cause but was a partial cause (say a 20%, 40%, 60%, or 80% cause) for the challenged action. See, e.g., id. Or, if the employer asserts multiple reasons, the evidence might be such as to justify belief (to some degree) of some reasons but not others. All other things being equal, the more strongly and completely the trier of fact can rationally rule out the employer's reason(s), the more justified it is to conclude that there was discrimination on the ground alleged -- and vice versa.

Third, disbelief of the employer's proffered reason(s) may also give rise to an inference that the employer was trying to conceal discrimination on the ground that the plaintiff claims. But the strength of this inference, too, will vary based

24

on the facts. Its strength will depend on whether there is evidence in the record of some other possible explanation that the employer might not want to disclose (e.g., in our prior hypothetical, handicap discrimination). In addition, its strength will obviously be proportional to the extent and strength of the trier of fact's disbelief of the employer's reason(s).

The fourth category of evidence that may remain after the McDonnell Douglas presumption "bursts" consists of any other relevant evidence of discrimination on the ground asserted. "[S]tray remarks in the workplace" that are insufficient to make out a Price Waterhouse case are an example. See Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring).

Based on the two fundamental principles noted at the outset -- i.e., that the plaintiff always bears the ultimate burden of proving intentional discrimination on the ground alleged and that the McDonnell Douglas presumption "bursts" -- it appears that when the defendant satisfies its production burden and the court must decide whether to grant summary judgment or judgment as a matter of law for the defendant, the court should decide whether in the particular case at hand the evidence in all of these four categories taken together could persuade a reasonable trier of fact by a preponderance of the evidence that discrimination on the ground alleged was a determinative cause of the challenged action.

If we were free in this case to apply this mode of analysis, we would discuss the evidence in some detail. For

present purposes, however, we think that it suffices to say that we are inclined to agree with the district court's evaluation of the proof. However, since we are not free to employ this mode of analysis, we are required, as previously noted, to reverse the entry of judgment as a matter of law in duPont's favor.

III.

We must therefore consider whether the district court also erred when it granted duPont's motion for a new trial. Such a motion may be granted even if the evidence is legally sufficient to support the verdict. Roebuck v. Drexel University, 852 F.2d 715, 735 (3d Cir. 1988). A new trial is appropriate so long as the district court could "reasonably conclude[] that a miscarriage of justice would occur if the jury's verdict were left [to] stand." Klein v. Hollings, 992 F.2d 1285, 1290 (3d Cir. 1993) (quoting Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1348 (3d Cir. 1991)) (citing Shanno v. Magee Indus. Enters., Inc., 856 F.2d 562, 567 (3d Cir. 1988)). A trial court's decision to grant a new trial based on the weakness of the prevailing party's evidence is generally reviewed for an abuse of discretion. Greate Bay Hotel & Casino v. Tose, 34 F.3d 1227, 1235 (3d Cir. 1994); 9A Wright & Miller, Federal Practice and Procedure § 2540 at 378 (1995). The trial court deserves this deference because it is better able to weigh the evidence presented at trial. However, when it is argued that the district court's order was based on the application of incorrect legal precepts, we exercise plenary review with respect to that

26

contention.  See generally Greate Bay Hotel, 34 F.3d at 1235;

Rotondo v. Keene Corp., 956 F.2d 436, 438 (3d Cir. 1992).

In this case, the district court applied the correct legal standard when it granted duPont's motion.  The court recognized that "[a] new trial cannot be granted . . . merely because the court would have weighed the evidence differently and reached a different conclusion."  Sheridan II at 12 (quoting Markovich v. Bell Helicopter Textron, Inc., 805 F. Supp. 1231, 1235 (E.D. Pa.), aff'd, 977 F.2d 568 (3d Cir. 1992)).  Instead, the court stated, a new trial may be granted on the ground that the verdict was against the weight of the evidence when the failure to do so would result in injustice or shock the conscience of the court.  Moreover, in assessing the evidence, the court recognized that disbelief of duPont's proffered reason was evidence of discrimination.  Accordingly, we hold that the district court applied the correct legal precepts in ruling on duPont's new trial motion, and we therefore review this decision for an abuse of discretion.

Like the district court, we find little evidence of sex discrimination.  Although there is evidence that management may have treated Sheridan unfairly, there is scant evidence that this was because she was a woman.  Sheridan's testimony that Amblard would not address her in the company of her male supervisor and that he told her he would watch her like a "hawk" indicates little more than personal dislike.  Although a man was promoted to manager of restaurants and a man replaced Sheridan as head captain of the Green Room, the record indicates that at all

relevant times, two of the other four head captain positions at the hotel were filled by women.  Sheridan II at 10.  Based on this evidence, we cannot find that the district court abused its discretion in granting a new trial on the constructive discharge claim.[0]

IV.

We next consider whether the district court erred in dismissing the claims against Amblard, the hotel general manager, on the ground that Title VII does not impose liability on individual employees.  App. 847-48.  Title VII states that

> [i]t shall be an unlawful employment practice
> for an employer --

---

[0]The dissenting opinion concludes that the district court's new trial ruling was tainted by its decision on the motion for judgment as a matter of law.  We disagree.  In ruling on the motion for a new trial, the district court assumed that its order granting judgment as a matter of law would be reversed and, in the alternative, still granted the motion for a new trial. Sheridan II at 12 & n.11.  We therefore do not agree that the new trial decision is undermined by our reversal of the order granting judgment as a matter of law.

The dissenting opinion also suggests that the district court may have failed to apply the complete test in ruling on the motion for a new trial.  The dissent apparently is concerned that the district judge did not make an explicit finding that allowing the verdict to stand would effect a miscarriage of justice. Although such a finding would have been helpful for our review, the district court did recognize that a motion for a new trial should be granted on the ground that the verdict is against the weight of the evidence only "`when the failure to do so would result in injustice, or would shock the conscience of the court.'"  Id. at 12 (citation omitted).  We do not see how this statement differs in any material way from the test set forth in the dissenting opinion, and we think that a finding that this standard had been satisfied was certainly implicit in the court's decision to grant the motion for a new trial.  We therefore do not agree that the court misapplied the test governing the motion for a new trial.

28

> (1) to fail or refuse to hire or to
> discharge any individual, or otherwise to
> discriminate against any individual with
> respect to his compensation, terms,
> conditions, or privileges of employment,
> because of such individual's race, color,
> religion, sex, or national origin . . . .

42 U.S.C. § 2000e-2(a)(1).  The term "employer"

> means a person engaged in an industry
> affecting commerce who has fifteen or more
> employees . . ., and any agent of such a
> person . . . .

42 U.S.C. § 2000e(b).

Sheridan argues that these provisions permitted her to assert claims against Amblard.  She notes that § 2000e(b) defines the term "employer" to include "any agent" of an employer, and she contends that Amblard was an "agent" of duPont.  She also observes that under the Civil Rights Act of 1991, a Title VII plaintiff may now obtain relief -- compensatory damages -- that a defendant such as Amblard is in a position to provide.  See 42 U.S.C. § 1981a(a)(1).

Arguments such as Sheridan's have been considered by many of the other courts of appeals in cases under Title VII, as well as the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"), which contain definitions of an "employer," 29 U.S.C. § 630(b) and 42 U.S.C. §12111(5), that mirror that of Title VII.  Many of these courts appear to have completely rejected the concept of employee liability.  See, e.g., Tomka v. Seiler Corp., 66 F.3d 1295, 1313-17 (2d Cir. 1995) (Title VII); Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir.) (Title VII), cert. denied, 116 S. Ct. 569 (1995);

<u>Equal Employment Opportunity Commission v. AIC Security</u>

<u>Investigations, LTD.</u>, 55 F.3d 1276, 1279-82 (7th Cir. 1995)

(ADA); <u>Cross v. State of Alabama</u>, 49 F.3d 1490, 1504 (11th Cir.

1995) (Title VII) (citing <u>Busby v. City of Orlando</u>, 931 F.2d 764,

772 (11th Cir. 1991) (Title VII)); <u>Smith v. Lomax</u>, 45 F.3d 402,

403 n.4 (11th Cir. 1995) (Title VII and ADEA); <u>Grant v. Lone Star</u>

<u>Co.</u>, 21 F.3d 649, 653 (5th Cir.) (Title VII),[0] <u>cert. denied</u>, 115

S. Ct. 574 (1994); <u>Miller v. Maxwell's Int'l Inc.</u>, 991 F.2d 583,

587 (9th Cir. 1993) (Title VII and ADEA), <u>cert. denied</u>, 114 S.

Ct. 1049 (1994).[0]

---

[0] An earlier Fifth Circuit case that seemed to reach a contrary result, <u>Hamilton v. Rodgers</u>, 791 F.2d 439 (5th Cir. 1986), has been held to be "nonauthoritative." <u>Harvey v. Blake</u>, 913 F.2d 226, 228 n.1 (5th Cir. 1990).

[0] In addition, the Fourth Circuit has rejected such claims against employees based on "personnel decisions of a plainly delegable character." <u>Birkbeck v. Marvel Lighting Corp.</u>, 30 F.3d 507, 510-11 & n.1 (4th Cir.), <u>cert. denied</u>, 115 S. Ct. 666 (1994); <u>see also</u> <u>Paroline v. Unisys Corp.</u>, 879 F.2d 100, 104 (4th Cir. 1989) (employee may be individually liable for sexual harassment), <u>vacated in part on other grounds</u>, 900 F.2d 27 (4th Cir. 1990) (<u>in banc</u>). The law in the Sixth and Tenth Circuits is less clear. For the Sixth Circuit, <u>see</u>, <u>e.g.</u>, <u>Jones v. Continental Corp.</u>, 789 F.2d 1225, 1231 (6th Cir. 1986) (statement, in discussion of award of attorney's fees, that Title VII claims may be asserted against employees); <u>Romain v. Kurek</u>, 772 F.2d 281 (6th Cir. 1985); <u>York v. Tennessee Crushed Stone Ass'n</u>, 684 F.2d 360 (6th Cir. 1982); <u>see</u> <u>generally</u> <u>Winston v. Hardee's Food Systems, Inc.</u>, 903 F. Supp. 1151 (W.D. Ky. 1995) (noting absence of controlling Sixth Circuit authority, collecting cases, and holding no employee liability under Title VII); <u>Johnson v. University Surgical Group</u>, 871 F. Supp. 979, 981-86 (S.D. Ohio 1994) (noting absence of controlling Sixth Circuit authority, collecting cases, and holding employee may be liable under Title VII). For the Tenth Circuit, <u>see</u>, <u>e.g.</u>, <u>Ball v. Renner</u>, 54 F.3d 664, 668-69 (10th Cir. 1995) (holding employee not individually liable at least where he or she does not exercise employer-like functions); <u>Lankford v. City of Hobart</u>, 27 F.3d 477, 480 (10th Cir. 1994) (no employee liability); <u>Brownlee v. Lear Siegler Management Services Corp.</u>, 15 F.3d 976, 978 (10th Cir.) (dictum that employees may be liable under ADEA), <u>cert. denied</u>, 114 S. Ct. 2743 (1994); <u>Sauers</u>

Among other things, the decisions rejecting employee liability note that Title VII's definition of an "employer" predates the Civil Rights Act of 1991; that before the passage of that Act, Title VII did not permit compensatory or punitive damages; and that the equitable remedies, including back pay, that were then available were directed against the employer. AIC Security Investigations, LTD., 55 F.3d at 1281; Miller, 991 F.2d at 587 n.2; Grant, 21 F.3d at 652-53. From these facts, it has been inferred that prior to 1991, an employee could not be sued, and it has been noted that Congress did not indicate any desire to change this rule when it passed the 1991 Act. Id. On the contrary, it has been argued that the statutory scheme of the 1991 Act affirmatively indicates that Congress assumed that employees would not be sued under Title VII. In passing the 1991 Act, Congress limited damages available based upon the size of the defendant. Under § 1981a(b)(3),

---

v. Salt Lake County, 1 F.3d 1122, 1124-25 (10th Cir. 1993) (holding that claim against employee must be deemed to be in official capacity). The First and Eighth Circuits have not yet addressed the issue. See Lenhardt v. Basic Institute of Technology, Inc., 55 F.3d 377, 380 (8th Cir. 1995) (not reaching issue of employee liability under Title VII, but interpreting similar state statute to preclude employee liability); Weeks v. State of Maine, 871 F. Supp. 515, 516 (D. Me. 1994) (noting lack of First Circuit precedent). Also, numerous district court decisions from this circuit have reached the same conclusion and found no employee liability, see, e.g., Ascolese v. SEPTA, 902 F. Supp. 533 (E.D. Pa. 1995); Clark v. Commonwealth of Pennsylvania, 885 F. Supp. 694 (E.D. Pa. 1995); Caplan v. Fellheimer Eichen Braverman & Kaskey, 882 F. Supp. 1529 (E.D. Pa. 1995); Verde v. City of Philadelphia, 862 F. Supp. 1329 (E.D. Pa. 1994), although several other courts have reached the opposite result, see, e.g., Doe v. William Shapiro, Esq., P.C., 852 F. Supp. 1246 (E.D. Pa. 1994); Dreisbach v. Cummins Diesel Engines, Inc., 848 F. Supp. 593 (E.D. Pa. 1994).

31

> [t]he sum of the amount of compensatory
> damages awarded . . . shall not exceed . . .
>
>> (A) in the case of a respondent who has
>> more than 14 and fewer than 101
>> employees . . . $50,000;
>>
>> (B) in the case of a respondent who has
>> more than 100 and fewer than 201
>> employees . . . $100,000;
>>
>> (C) in the case of a respondent who has
>> more than 200 and fewer than 501
>> employees . . . $200,000; and
>>
>> (D) in the case of a respondent who has
>> more than 500 employees . . . $300,000.

42 U.S.C. § 1981a(b)(3). This section, it has been argued, suggests that Congress did not contemplate a respondent who was not an employer. See AIC Security, 55 F.3d. at 1281; Miller, 991 F.2d at 587 n.2; see also Ascolese v. SEPTA, 902 F. Supp. at 540–41. While reasonable arguments in favor of the contrary position can be made, see Miller, 991 F.2d at 588–90 (Fletcher, J., dissenting); Tomka, 66 F.3d at 1318–24 (Parker, J., dissenting), we follow the great weight of authority from other courts of appeals and hold that an employee cannot be sued. We therefore affirm the dismissal of Sheridan's claims against Amblard.

V.

We next consider whether the district court erred in granting in part duPont's motion in limine to preclude certain evidence. Sheridan had sought to introduce testimony by co-worker Mary Deptula regarding a suggestive remark that was allegedly made by Amblard when he saw a woman in a tight dress. Deptula would also have testified that one day when she

32

volunteered to park cars, Amblard told her that she could not do so because she was a woman. App. 1520-21. The district court found these statements to be "prejudicial and irrelevant" and granted the defendants' motion in limine to exclude testimony concerning them under Federal Rules of Evidence 401 and 403. App. 44.

We generally review district court rulings concerning Rule 403 for an abuse of discretion. <u>Glass v. Philadelphia Electric Co.</u>, 34 F.3d 188, 191 (3d Cir. 1994). However, when the district court "failed to explain its grounds for [deciding] a Rule 403 [motion] and its reasons for doing so are not otherwise apparent from the record, . . . we may undertake to examine the record and perform the required balancing ourselves." <u>United States v. Himelwright</u>, 42 F.3d 777, 781 (3d Cir. 1994) (citations omitted).

In this case, we need not decide the appropriate standard of review because we conclude that under either standard the district court properly excluded the testimony under Rule 403. Amblard's comments had little probative value as to whether he had a gender-based animus against Sheridan and whether this animus was a determinative factor in any of the actions taken. <u>See</u> <u>Hook v. Ernst & Young</u>, 28 F.3d 366, 369, 376 (3d Cir. 1994). On the other hand, these comments raise a substantial danger of unfair prejudice. Thus, we hold that the district court properly excluded Deptula's testimony under Rule 403.

Sheridan also sought to admit testimony by co-worker April Akers that Amblard complimented many of the men on the

staff but never complimented Sheridan or the other women. App. 1515; see also Pl.'s Br. at 38–39. The defendants, however, claim that Sheridan never sought to admit this portion of Akers's deposition testimony into evidence. Defs.' Br. at 28 n. 6. Sheridan has not provided a record citation showing that she attempted to introduce this evidence. Sheridan's only reference is to a court order precluding Akers from testifying as to (1) Sheridan's qualifications and job performance and (2) rumors that Sheridan was stealing from the hotel. App. 43. In this order, the court did not address the testimony by Akers that Sheridan now seeks to admit. Thus, we do not believe that Sheridan raised this claim at trial, and in any event she has not properly presented this argument on appeal. See Third Circuit Local Appellate Rule 28.1(a)(i)(1).

                              VI.

        Sheridan's final two arguments do not require extended discussion. Sheridan contends that defense counsel's use of a peremptory challenge based on the age of a member of the venire violated equal protection. For the reasons explained in our opinion in Pemberthy v. Beyer, 19 F.3d 857, 870 & n.18 (3d Cir.), cert. denied, 115 S. Ct. 439 (1994), we hold that this strike was permissible.

        Sheridan also maintains that defense counsel improperly vouched for the credibility of certain witnesses during summation and that the district court should have instructed the jury to disregard those statements. However, assuming for the sake of

                              34

argument that defense counsel's remarks were objectionable, we hold that a new trial on Sheridan's denial-of-promotion and retaliation claims is not warranted.

## VII.

For the reasons stated, we reverse the district court's entry of judgment in favor of duPont on the constructive discharge claim, but we affirm the court's decision to grant duPont's motion for a new trial on that claim. We affirm the judgment against Sheridan on her claims against Amblard and her denial-of-promotion and retaliation claims. We also hold that the district court properly granted duPont's in limine motion to exclude evidence, and we remand this case to the district court for further proceedings consistent with this opinion.

Sheridan v. E.I. duPont de Nemours & Co., No. 94-7509


SLOVITER, Chief Judge, concurring in the judgment reversing the entry of judgment as a matter of law and dissenting from the judgment affirming the grant of a new trial.


## I.

Although I join in the majority's conclusion that the judgment as a matter of law on Sheridan's constructive discharge claim should be reversed, I cannot join in much of its language in doing so, particularly its suggestion that this court has taken a wrong path in its series of opinions interpreting the Supreme Court's opinion in St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742 (1993).

In Hicks, the Court was faced with a holding of a court of appeals that a factfinder's rejection of the defendant's proffered reason for its adverse employment action compels a judgment for the plaintiff. In concluding that it does not, the Court also explicitly stated that such a finding permits the factfinder to draw the inference that the defendant intentionally discriminated against the plaintiff. Thus, we have read Hicks to establish that the disbelief of the defendant's proffered reasons is the threshold finding, beyond which the jury is permitted but not required to draw the inference of intentional discrimination. See 113 S. Ct. at 2749. In Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994), from which the majority seeks to disassociate, we stated that a plaintiff survives summary judgment by producing

36

sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action.

As the majority recognizes, numerous other courts have likewise interpreted the Supreme Court's decision in Hicks. See e.g., Barbour v. Merrill, 48 F.3d 1270, 1277 (D.C. Cir. 1995) ("According to Hicks, a plaintiff need only establish a prima facie case and introduce evidence sufficient to discredit the defendant's proffered nondiscriminatory reasons; at that point, the factfinder, if so persuaded, may infer discrimination."), petition for cert. filed, 64 U.S.L.W. 3068 (U.S. Jul. 3, 1995) (No. 95-27); EEOC v. Ethan Allen, Inc., 44 F.3d 116, 120 (2d Cir. 1994) ("A finding of pretextuality allows a juror to reject a defendant's proffered reasons for a challenged employment action and thus permits the ultimate inference of discrimination."); Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1083 (6th Cir. 1994) ("Hicks clarified that the only effect of the employer's nondiscriminatory explanation is to convert the inference of discrimination based upon the plaintiff's prima facie case from a mandatory one which the jury must draw, to a permissive one the jury may draw, provided that the jury finds the employer's explanation `unworthy' of belief."); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1123-24 (7th Cir. 1994) ("The Court [in Hicks] explicitly states that the plaintiff may prevail in a discrimination case by establishing a prima facie case and by showing that the employer's proffered non-discriminatory reasons for her demotion or discharge are

37

factually false."); <u>Washington v. Garrett</u>, 10 F.3d 1421, 1433 (9th Cir. 1993) ("[A]s <u>St. Mary's</u> recognizes, the factfinder in a Title VII case is entitled to infer discrimination from plaintiff's proof of a <u>prima facie</u> case and showing of pretext without anything more . . . .").

Instead of following this precedent, the majority would require, at least in some cases, evidence beyond that establishing the prima facie case and supporting the factfinder's rejection of the defendant employer's proffered reasons in order to find that plaintiff has met his or her burden of showing intentional discrimination.  The majority offers no guidance as to what specific additional evidence would be required, but rather would allow the district court to base its determination on its own evaluation of the following four considerations: 1) the strength of the inference of discrimination arising from the elements of the prima facie case; 2) the degree to which an inference of discrimination drawn from the rejection of the employer's proffered reasons is justified; 3) the strength of the inference "that the employer was trying to conceal discrimination," and 4) any other evidence of discrimination on the ground asserted.

However, the imposition of such an additional evidentiary requirement is directly contrary to the Supreme Court's statement in <u>Hicks</u> that "rejection of the defendant's proffered reasons, will <u>permit</u> the trier of fact to infer the ultimate fact of intentional discrimination, and . . . upon such rejection, `[n]o additional proof of discrimination is

38

required.'" 113 S. Ct. at 2749 (emphasis in original) (citation omitted). Although the majority sees a conflict between this statement and the requirement that the plaintiff must prove intentional discrimination, the Court in Hicks believed otherwise, stating that "there is nothing whatever inconsistent between this statement and our later statements that (1) the plaintiff must show 'both that the reason was false, and that discrimination was the real reason,' and (2) 'it is not enough . . . to disbelieve the employer'." Id. at 2749 n.4 (citations omitted) (emphasis in original). The Court explained that "even though . . . rejection of the defendant's proffered reasons is enough at law to sustain a finding of discrimination, there must be a finding of discrimination." Id. (emphasis in original).

The reasons why the factfinder should be entitled to infer intentional discrimination from this evidence appear from the relevant caselaw. We have repeatedly acknowledged the difficulty of proving intentional discrimination in Title VII cases. See, e.g., Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 897 (3d Cir.)(in banc), cert. dismissed, 483 U.S. 1052 (1987); Dillon v. Coles, 746 F.2d 998, 1003 (3d Cir. 1984). "This is true in part because . . . discrimination . . . is often subtle." Chipollini, 814 F.2d at 899. As the Supreme Court has recognized, "[t]here will seldom be `eyewitness' testimony as to the employer's mental processes." United States Postal Serv. Bd. of Govs. v. Aikens, 460 U.S. 711, 716 (1983). We have tied the Supreme Court's establishment of a distinct method of proof in employment discrimination cases, that relies on presumptions and

39

shifting burdens of production, to the Court's recognition that direct evidence of an employer's motivation will often be unavailable or difficult to acquire.  See Chipollini, 814 F.2d at 897; Dillon, 746 F.2d at 1003.

The initial presumption of discrimination arises from the plaintiff's prima facie case of discrimination "because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978).  I assume that the same logic, albeit unarticulated, was the basis for the Supreme Court's statement in Hicks that disbelief of the employer's reason will permit the factfinder to infer the ultimate fact of discrimination, see Hicks, 113 S. Ct. at 2749, even though the presumption "drops from the case" after the defendant proffers a legitimate reason.  Texas Dept. of Community Affs. v. Burdine, 450 U.S. 248, 255 & n.10 (1981).

The fact that the issue arises here in the context of a motion for judgment as a matter of law rather than for summary judgment should make no difference.  Because a finding of intentional discrimination generally depends heavily on assessments of the credibility of witnesses and those credibility assessments are traditionally left to the jury, it follows that the jury must be permitted to draw the inference of intentional discrimination from its negative credibility finding.  See Barber v. CSX Distribution Servs., 68 F.3d 694, 700 (3d Cir. 1995) ("Evaluation of witness credibility is the exclusive function of the jury, and where the only evidence of intent is oral

40

testimony, a jury could always choose to discredit it." (quoting Bhaya v. Westinghouse Elec. Corp., 832 F.2d 258, 262 (3d Cir. 1987))). See also Aikens, 460 U.S. at 716 ("It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much a fact as anything else." (quoting Edgington v. Fitzmaurice, 29 Ch. Div. 459, 483 (1885))); Chipollini, 814 F.2d at 899 ("The issue of the defendant's intent at the time of the plaintiff's discharge is clearly a factual question.").

The majority seems to believe that this court's focus on the credibility of the defendant's proffered explanation impermissibly gives continuing weight to the presumption of discrimination created by the prima facie case even after the McDonnell-Douglas presumption "bursts." However, I see nothing that undermines the "bursting" of the presumption. The McDonnell-Douglas prima facie case is used only to move the plaintiff's case past the pleadings stage. Once defendant has satisfied its burden under Burdine to articulate a nondiscriminatory reason for the employment decision, and plaintiff has cast doubt on that reason, the case then moves from the summary judgment stage to the factfinder. It is at that stage that the credibility of the defendant's proffered explanation may play a significant – even a determinative – role.

As the Court stated in Hicks, "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie

41

case, suffice to show intentional discrimination." 113 S. Ct. at 2749. Fuentes and our later cases have reasonably concluded from this statement that a plaintiff who has made out a prima facie case may defeat an adverse judgment by the court by producing evidence from which a factfinder might discredit the defendant's proffered reasons.

The majority is mistaken in its view that basing a finding of intentional discrimination on the jury's rejection of the employer's explanation together with the facts supporting the prima facie case is inconsistent with the bursting of the presumption. In Burdine itself, the Supreme Court made clear that "[i]n saying that the presumption drops from the case, we do not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a prima facie case. . . . [T]his evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual." Burdine, 450 U.S. at 255 n.10.

Much of the majority's discussion is predicated on its concern that an employer may proffer a false reason for its actions, not to conceal the discrimination alleged but rather to conceal a different form of discrimination or some other unlawful conduct. The courts should not base their decisions on such a hypothesis. We routinely expect a party to give honest testimony in a court of law; there is no reason to expect less of a defendant charged with unlawful discrimination. If a defendant fails to come forward with the true and credible explanation,

42

there is no policy to be served by refusing to permit the jury to infer that the real motivation is the one that the plaintiff has charged.

In sum, I continue to believe that this court's interpretation of Hicks, as stated in Fuentes, Waldron v. SL Indus., Inc., 56 F.3d 491 (3d Cir. 1995), Sempier v. Johnson & Higgins, 45 F.3d 724 (3d Cir.), cert. denied, 115 S. Ct. 2611 (1995), and most recently in Brewer v. Quaker State Oil Ref. Corp., No. 95-3101, 1995 WL 737890 (3d Cir. Dec. 19, 1995), is true to the language and holding of Hicks and the principles upon which it rests.

This does not mean that the courts in discrimination cases lose their traditional obligation to review the sufficiency of the showing on which summary judgment may be based or, if the issue is judgment as a matter of law, the adequacy of the showing plaintiff made to the factfinder. In both such instances, the district court must determine whether the plaintiff has cast sufficient doubt upon the employer's proffered reasons to permit a reasonable factfinder to conclude that the reasons are incredible. See, e.g., Fuentes, 32 F.3d at 764-765; Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 523, 531, 533 (3d Cir. 1992), cert. denied, 114 S. Ct. 88 (1993). But once the court is satisfied that the evidence meets this threshold requirement, it may not pretermit the jury's ability to draw inferences from the testimony, including the inference of intentional discrimination drawn from an unbelievable reason

43

proffered by the employer.  For these reasons, I agree that the judgment for duPont as a matter of law must be reversed.[0]

## II.

However, I respectfully disagree that we should affirm the order granting a new trial and instead would remand so that the district court can reconsider that issue.  The district court's explanation for its grant of a new trial was brief, inasmuch as its ruling focused primarily on its decision to grant defendant's motion for judgment as a matter of law.  The court noted in a footnote that it was obliged under Rule 50(c) to make a conditional ruling on the defendant's motion for a new trial. To comply with that requirement, the court stated merely that it "would grant the motion for a new trial because the jury's verdict is contrary to the weight of the evidence."  D. Ct. Opinion at 12 n.11.

The majority would affirm the grant of a new trial, noting that the court "applied the correct legal precepts." Majority Opinion at 28.  I am less confident than the majority that this is so.  If the majority is suggesting that the district

---

[0]As to the dismissal of the claims against Amblard on the ground that Title VII does not impose personal liability on individual employees, although I find the reasoning of Judge Fletcher and Judge Parker convincing, see Miller v. Maxwell's Int'l Inc., 991 F.2d 583, 588-90 (9th Cir. 1993) (Fletcher, J., dissenting); Tomka v. Seiler Corp., 66 F.3d 1295, 1318-24 (2d Cir. 1995) (Parker, J., dissenting), the majority correctly notes that the great weight of authority from other courts of appeals is otherwise, and I see no purpose to dissent from the court's judgment on this issue.

44

court made no error of law in its post-trial rulings, this statement would be inconsistent with our ruling that the district court made a substantial error of law in its understanding of the quantum of evidence that is needed to uphold a jury's verdict. The district court based its grant of judgment as a matter of law on its understanding that "[i]n order to demonstrate that gender was a motivating factor, plaintiff would have to point to some evidence that that was the motive of those in the decision-making process. No such evidence exists in the record." D. Ct. Opinion at 11-12. This substantial legal error is the basis for our decision today to reverse the district court's grant of judgment as a matter of law.

The district court was clearly operating under the misconception that direct evidence of discriminatory intent was necessary to sustain the jury's verdict. It seems likely that the court's conclusion that specific evidence of gender discrimination was necessary led ineluctably to its conditional new trial ruling. However, because such evidence is not a prerequisite to a finding of discrimination, I believe the district court should be given the opportunity to reconsider whether a new trial is warranted in light of the correct legal principles.

I believe it is also unclear whether the district court applied the complete test for ruling on a new trial motion. In granting that motion, the district court merely concluded that the jury's verdict was contrary to the weight of the evidence. I recognize that a new trial may be granted even if the evidence is

45

legally sufficient to support the verdict. <u>Roebuck v. Drexel Univ.</u>, 852 F.2d 715, 735 (3d Cir. 1988). However, we have cautioned that a district court should grant a new trial on the basis that the verdict was contrary to the weight of the evidence "only where a miscarriage of justice would result if the verdict were to stand." <u>Williamson v. Consol. Rail Corp.</u>, 926 F.2d 1344, 1352 (3d Cir. 1991). We have explained that this stringent standard is necessary to ensure that a district court "does not substitute its `judgment of the facts and the credibility of the witnesses for that of the jury.'" <u>Fineman v. Armstrong World Indus., Inc.</u>, 980 F.2d 171, 211 (3d Cir. 1992) (quoting <u>Lind v. Schenley Indus. Inc.</u>, 278 F.2d 79, 90 (3d Cir. 1960)), <u>cert. denied</u>, 113 S. Ct. 1285 (1993). "Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of facts." <u>Id.</u>

Therefore, before imposing on Sheridan the burden and expense of a new trial, I would remand to require the district court to determine whether, inasmuch as Sheridan was not obliged to produce direct evidence of discriminatory intent, the jury's verdict for Sheridan was against the great weight of the evidence and would effect a miscarriage of justice.

46