EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellant,

v.

ETHAN ALLEN, INC., and Ethan Allen
Furniture Orleans Division,
Defendants–Appellees.

No. 465, Docket 94–6063.

United States Court of Appeals,
Second Circuit.

Argued Oct. 3, 1994.

Decided Dec. 30, 1994.

John F. Suhre, E.E.O.C., Washington, DC (James R. Neely, Jr., Deputy General Counsel, Gwendolyn Young Reams, Associate General Counsel, Vincent J. Blackwood, Asst. General Counsel, E.E.O.C., Washington, DC, of counsel), for appellant.

Richard L. Barnes, Tulsa, OK (Evans, Johnson and Barnes, Tulsa, OK, of counsel), for appellees.

Before: MESKILL, MAHONEY and McLAUGHLIN, Circuit Judges.

MESKILL, Circuit Judge:

The Equal Employment Opportunity Commission (EEOC) brought this action on behalf of Hugh Pierce claiming that Pierce's former employers, Ethan Allen, Inc., and Ethan Allen Furniture Orleans Division (Ethan Allen), discharged Pierce because of his age in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 *et seq.* At the end of the defendants' case the district court, Parker, C.J., granted Ethan Allen's motion for judgment as a matter of law. *See* Fed.R.Civ.P. 50(a). Because we find that the district court erred in granting the motion, we vacate the judgment and remand for a new trial.

## BACKGROUND

We begin by summarizing the evidence the EEOC presented to the jury. In June 1990 Ethan Allen laid off Hugh Pierce, a sixty-four year old man. At the time of his discharge Pierce was employed as a special projects engineer in Ethan Allen's northeast regional office located in Orleans, Vermont. Immediately following the termination Pierce filed a discrimination claim with both the Vermont Attorney General's office and the EEOC, alleging that he was fired due to his age.

The EEOC's case consisted primarily of the testimony of Jean Lowell, a civil rights investigator in the Vermont Attorney General's office, who was responsible for investigating Pierce's complaint. Lowell testified that she initiated her inquiry into the charges by requesting Ethan Allen to respond to Pierce's allegations. In a written response Charles Farfaglia, Ethan Allen's director of personnel, denied that the company had terminated Pierce because of his age. Instead, Farfaglia maintained that as the workload for Pierce's position had become minimal and non-critical, it no longer made sense to staff his special projects position. Farfaglia also informed Lowell that none of Pierce's former duties had been transferred to any other employee. Finally, Farfaglia indicated that

Pierce's performance was not a factor in the employment decision.

Lowell testified that she did not credit the official explanation she received from Farfaglia because projects that Pierce was qualified to perform were assigned to a significantly younger employee. She had discovered during the course of her investigation that Ethan Allen had moved Roy Kvingedal, a thirty-eight year old special projects engineer, into the Orleans office shortly after Pierce's discharge. Lowell stated that when she asked Wendell Herman, Ethan Allen's plant manager at Orleans and one of the men involved in the decision to fire Pierce, about Kvingedal, Herman admitted that both Pierce and Kvingedal were competent to fill the position. Herman asserted, however, that Pierce's aversion to travel and paperwork prevented him from assigning projects to Pierce, and this factored into his decision to retain Kvingedal. Lowell stated, moreover, that Herman had acknowledged his failure to follow the guidelines established in Ethan Allen's written layoff policy in arriving at his decision.[1]

Ethan Allen moved pursuant to Federal Rule of Civil Procedure 50(a) for judgment as a matter of law at the close of the EEOC's case-in-chief. Ethan Allen contended that the EEOC had failed to demonstrate a prima facie case of age discrimination. Concluding that the EEOC indeed had demonstrated a prima facie case, the district court denied the motion. Ethan Allen then presented evidence of its own reasons for Pierce's discharge.

According to Farfaglia's testimony, Ethan Allen based its determination to retain Kvingedal and terminate Pierce on a thorough comparison of the two employees, using the criteria enunciated in the company's layoff policy as a backdrop. Farfaglia stated that he, Herman and another of Pierce's supervisors analyzed Pierce's performance and qualities vis-à-vis Kvingedal's, and decided that Kvingedal was better suited for the job. Farfaglia also testified that Kvingedal was a

---

1. Ethan Allen's "Lay-off and Recall" policy states that "[i]f a layoff becomes necessary, employees will be laid off on the following basis: 1. Productivity record. 2. Skill and ability. 3. Attendance and tardiness record. 4. Length of service within your department. 5. Length of service within the Orleans Division of Ethan Allen."

former plant manager, whereas Pierce was not, and that the company had an unwritten policy that plant managers should be the last to be fired, thus providing an additional reason to retain Kvingedal. Herman substantiated this testimony, contending that while he could not remember the specific details of the meeting, he was "sure that we covered Pierce's skills and abilities, attendance, productivity, and other people in that area." Herman denied, however, that Pierce's refusal to travel or do the required paperwork was a consideration in the layoff decision.

At the close of evidence Ethan Allen renewed its motion for judgment as a matter of law, arguing that Ethan Allen had proffered legitimate nondiscriminatory reasons for its decision to fire Pierce. Ethan Allen, moreover, contended that the EEOC had failed to introduce evidence suggesting that these reasons were pretextual. The district court, ruling from the bench, granted the motion, finding that the EEOC failed to present sufficient evidence from which a jury could conclude that Ethan Allen made the employment determination on the basis of Pierce's age. Accordingly, the district court entered judgment for Ethan Allen. The EEOC now appeals.

## DISCUSSION

■ Cases brought under the ADEA are governed by the structures developed under Title VII for mixed-motive and pretext discrimination claims. *See Kirschner v. Office of the Comptroller,* 973 F.2d 88, 91 (2d Cir.1992). Under the burden-shifting *McDonnell Douglas–Burdine* framework for analyzing pretext claims, the plaintiff first must create an inference of discrimination by establishing a prima facie case by a preponderance of the evidence. *See St. Mary's Honor Center v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The burden of production then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the challenged employment

action. *See St. Mary's Honor Center,* — U.S. at —, 113 S.Ct. at 2747; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Finally, the plaintiff then is accorded an opportunity to demonstrate that the defendant's articulated rationale was merely a pretext for discrimination. *See St. Mary's Honor Center,* — U.S. at — – —, 113 S.Ct. at 2747–48; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825.

■ Federal Rule of Civil Procedure 50 allows a defendant to move for judgment as a matter of law if, with respect to an issue essential to the plaintiff's case, there exists "no legally sufficient evidentiary basis" for the jury to find in favor of the plaintiff. Fed.R.Civ.P. 50(a). In our assessment of whether such a motion should have been granted, we "must 'view the evidence in the light most favorable to the party against which the motion was made.'" *Piesco v. Koch,* 12 F.3d 332, 343 (2d Cir.1993) (quoting *Metromedia Co. v. Fugazy,* 983 F.2d 350, 361 (2d Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993)). Thus, this Court may conclude that the motion properly was granted only if, notwithstanding making all credibility assessments and drawing all inferences in favor of the non-movant, a reasonable juror would be compelled to accept the view of the moving party. *See Piesco,* 12 F.3d at 343. Against this backdrop, we examine *de novo* the EEOC's claim that the district court improperly entered judgment in favor of Ethan Allen. *See Pierce v. F.R. Tripler & Co.,* 955 F.2d 820, 824 (2d Cir.1992).

■ As a threshold matter, appellees argue that this Court should affirm the district court's decision because the EEOC did not meet its initial burden of proving a prima facie case of age discrimination. However, "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); *see also EEOC v. Century Broadcasting*

*Corp.,* 957 F.2d 1446, 1455 (7th Cir.1992); *Bhaya v. Westinghouse Electric Corp.,* 832 F.2d 258, 260 (3d Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). Here, Ethan Allen failed to persuade the district court to dismiss the action for lack of a prima facie case at the close of the EEOC's case-in-chief. Ethan Allen then responded to the EEOC's proof by offering evidence of its nondiscriminatory reasons for the dismissal of Pierce. Consequently, the only relevant issue before us is whether there existed sufficient evidence for a jury to find the termination of Pierce discriminatory within the context of the ADEA. *See Aikens,* 460 U.S. at 715, 103 S.Ct. at 1481.

■ We believe that the EEOC did present a "legally sufficient evidentiary basis" from which a reasonable jury could have found that Ethan Allen dismissed Pierce because of his age. The EEOC introduced evidence suggesting that Ethan Allen provided inconsistent explanations for its decision to terminate Pierce. Indeed, Ethan Allen maintained at trial that its officials engaged in a thorough comparison of the merits of both Pierce and Kvingedal in accordance with its layoff policy, ultimately deciding that Kvingedal was better suited to undertake any available projects. Specifically, company officials testified to Kvingedal's experience, superior qualifications, and his status as a former plant manager as contributing factors in their employment decision. In its initial response to the state's investigation, however, Ethan Allen stated that the sole reason for Pierce's discharge was a decrease in the duties of his special projects position. Once it was discovered by the state investigator that there was work for Pierce, as evidenced by the assignment of projects to a significantly younger employee, the company no longer asserted this explanation. Rather, it then cited Pierce's performance problems, including his aversion to paperwork and his unwillingness to travel—even though Ethan Allen originally discounted performance as a determinative factor. By the time of trial, Ethan Allen claimed it had carefully weighed the two employees in the context of the criteria established by the written layoff policy. Ethan Allen offered this reason despite the fact that Wendell Herman, one of the decisionmakers, previously had admitted that the layoff policy was ignored as a guideline.

■ From such discrepancies a reasonable juror could infer that the explanations given by Ethan Allen at trial were pretextual, developed over time to counter the evidence suggesting age discrimination uncovered by the state investigation. *See DeMarco v. Holy Cross High School,* 4 F.3d 166, 171 (2d Cir.1993) (stating that pretext inquiry takes into consideration "whether the putative nondiscriminatory purpose was stated only after the allegation of discrimination"); *Schmitz v. St. Regis Paper Co.,* 811 F.2d 131, 132 (2d Cir.1987) (per curiam) (holding that shift in justifications given at trial which indicated an after-the-fact rationalization by the defendant could be sufficient to prove ' pretext) (citation omitted); *see also Washington v. Garrett,* 10 F.3d 1421, 1434 (9th Cir.1993) ("[I]n the ordinary case, such fundamentally different justifications for an employer's action ... give rise to a genuine issue of fact with respect to pretext since they suggest the possibility that ... the official reasons [were not] the true reason[s].");  *Castleman v. Acme Boot Co.,* 959 F.2d 1417, 1422 (7th Cir.1992) ("A jury's conclusion that an employer's reasons were pretextual can be supported by inconsistencies in ... the decisionmaker's testimony."). A finding of pretextuality allows a juror to reject a defendant's proffered reasons for a challenged employment action and thus permits the ultimate inference of discrimination. *See DeMarco,* 4 F.3d at 170 ("Proof that the employer has provided a false reason for its action permits the finder of fact to determine that the defendant's actions were motivated by an improper discriminatory intent, but does not compel such a finding.") (citing *St. Mary's Honor Center,* —— U.S. at —— – ——, 113 S.Ct. at 2748–49).

We find that the EEOC offered sufficient evidence for this case to be sent to the jury. While the evidence presented by Ethan Allen might well demonstrate that Pierce was terminated for reasons not related to age, this is a question better left for the jury to resolve. Accordingly, we conclude that the district

court improperly granted Ethan Allen's Rule 50 motion.

## CONCLUSION

Accordingly, we vacate the judgment of the district court and remand for a new trial.