**Margaret A. Naughton MARSHALL, Plaintiff,**

v.

**STATE OF NEW YORK DIVISION OF STATE POLICE, James P. McMahon in his Official Capacity as Superintendent of the New York State Division of State Police, David M. Luitweiler, in his Official Capacity as former First Deputy Superintendent of the New York State Division of State Police, Francis A. Defrancesco, in his Official Capacity as Chief Inspector of the New York State Division of State Police, and Thomas A. Constantine, in his Official Capacity as former Superintendent of the New York State Division of State Police, Defendants.**

No. 1–95–CV–806.

United States District Court, N.D. New York.

Aug. 6, 1998.

Higgins, Roberts, Beyerl & Coan, P.C., Schenectady, NY (Maryanne E. Low–Haviland, of counsel), for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York, Albany, NY (David B. Roberts, Asst. Atty. Gen., of counsel), for Defendants.

## MEMORANDUM, DECISION and ORDER

McAVOY, Chief Judge.

Currently before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 56. The instant claim arises from a civil action filed by plaintiff Margaret A. Naughton Marshall, a civilian employee of the State of New York Division of State Police, against the State of New York Division of State Police ("State Police"), and James P. McMahon, David M. Luitweiler, Francis A. DeFrancesco, and Thomas A. Constantine in their official capacities. Ms. Marshall brings suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), claiming sex discrimination. Ms. Marshall alleges she was twice denied promotion based on her gender. She also alleges that Defendants retaliated against her after she filed a complaint with the Equal Employment Opportunity Commission ("EEOC").

## I. FACTS

Ms. Marshall was hired by the State Police on October 28, 1976, as a Senior Budgeting Analyst Trainee I. After one year of employment, Ms. Marshall's position was upgraded to Senior Budgeting Analyst Trainee II. Following another year of employment, Ms. Marshall's position was again upgraded to Senior Budgeting Analyst.

In 1982, Richard Keeley, a male co-worker of Ms. Marshall's, was promoted to the position of Associate Budget Analyst. Both Mr. Keeley and Ms. Marshall had applied for the Associate Budget Analyst position. Ms. Marshall felt she was the more qualified candidate, and informally expressed her displeasure to her superiors following Mr. Keeley's promotion. One year later, Ms. Marshall was upgraded to the position of Associate Budget Analyst.

In 1992, it was announced that Tom Ryan, the Assistant Director of Fiscal Management, was planning to retire. (Pl.'s Dep. at 109–112). Ms. Marshall discussed the opening with Hanford Thomas, the Director of Fiscal Management. Recounting the promotion of Mr. Keeley, Ms. Marshall expressed her concern that there had never been a "level playing field" at the State Police with regard to gender, and that this would affect her chances of being promoted to the Assistant Director position. (Pl.'s Dep. at 120–24). She then asked Mr. Thomas if she had a realistic chance of being promoted to the Assistant Director position, and, according to Ms. Marshall, he replied it "depended on whether or not they viewed this assistant director's job as a training position for the director's job." (Pl.'s Dep. at 122). Given the context of the discussion, Ms. Marshall took this to mean that the State Police would be unwilling to promote a woman to the Director position, and if the Assistant Director position was viewed as a step to that position, she would be denied promotion to the Assistant Director position based on her gender.

Following Mr. Ryan's retirement, the State Police posted the job opening. Ms. Marshall applied and was interviewed, but was not chosen for the position. Instead, William J. Callahan, a Senior Budget Examiner with the New York State Division of the Budget, was appointed to the position on October 15, 1992. Ms. Marshall filed suit with the EEOC on April 30, 1993, alleging that the promotion of Mr. Callahan constituted gender discrimination.

In 1994, the position of Director of Fiscal Management became vacant. Ms. Marshall and Mr. Callahan applied for the job and were interviewed. Following the interview process, Mr. Callahan was selected for the position. The promotion of Mr. Callahan to the Director position left the Assistant Director position open. Ms. Marshall again applied for the Assistant Director position. She was interviewed and promoted to the position, which she currently holds.

In addition to her initial claims of sex discrimination under Title VII, Ms. Marshall brings allegations of retaliatory treatment for her filing of the EEOC complaint, including the refusal to appoint her Director of

Fiscal Management in 1994. Defendants move for Summary Judgment claiming that the record shows no issue of material fact.

## II. DISCUSSION

### 1. The Standard for Summary Judgment

In considering a motion for summary judgment the Court must resolve all ambiguities and draw all inferences in favor of the party defending against the motion. *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985). Summary judgment shall enter if the Court determines "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In opposing a motion for summary judgment, the non-movant must demonstrate to the court that issues of fact exist that must be decided by a factfinder because "they may reasonably be decided in favor of either party." *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990).

In light of these considerations the Court considers Defendants' Motion for Summary Judgment.

### 2. Plaintiff's Title VII Sex Discrimination Claims

Actions brought pursuant to Title VII involve a burden shifting analysis. *See, e.g., Russo v. Trifari, Krussman & Fishel*, 837 F.2d 40, 43 (2d Cir.1988). A plaintiff must first prove a *prima facie* case of discrimination by a preponderance of the evidence. The burden then shifts to the defendant to provide a legitimate nondiscriminatory reason for the alleged discriminatory act. If the defendant meets this burden, the burden shifts back to the plaintiff, who can defeat defendant's showing by proving, by a preponderance of the evidence, that defendant's proffered explanation is merely pretext for discriminatory action. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Lowe v. Commack Union Free Sch. Dist.*, 886 F.2d 1364, 1369 (2d Cir.1989). The Supreme Court has interpreted pretext to mean not only that the employer's explanation is false, but that "the real reason was intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The Court now examines each step in the burden shifting analysis of Plaintiff's Title VII claim. Because Plaintiff's Memorandum of Law grounds her Title VII claim in her 1992 and 1994 promotion denials, the Court will confine its burden shifting analysis to these two incidents. (Pl.'s Mem. of Law at 13).

#### a. Plaintiff's *Prima Facie* Case

■ Plaintiff may prove her *prima facie* case by showing that: (1) she belongs to a protected class; (2) she was qualified for the position for which she applied; (3) despite her qualifications, she was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination, or direct evidence demonstrates that Defendants discriminated against her. *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1239 (2d Cir.1995).

There is no dispute that Plaintiff, a woman, belongs to a protected class as defined by Title VII. *See* 42 U.S.C. § 2000e–2(a)(1). Nor are Plaintiff's qualifications in dispute. She met the qualifications for both the Assistant Director and Director of Fiscal Management positions. Following a review of resumes by the State Police, Plaintiff was selected to be interviewed for, and was ultimately promoted to, the position of Assistant Director in 1994. Nor is it disputed that Plaintiff was not hired as Assistant Director in 1992 and as Director in 1994, and was thus subjected to an adverse employment action.

■ Plaintiff must show, however, that direct evidence supports her allegations of discrimination or that circumstances surrounding her allegations give rise to an inference of discrimination. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir.1982). Al-

though the Court finds no direct evidence supporting Plaintiff's allegations, an inference of discrimination is present when a hiring or promotional preference is given to a member of a non-protected group. *Powell v. Syracuse University,* 580 F.2d 1150, 1156 (2d Cir.1978). In the instant case, William J. Callahan, a white male, was selected over Plaintiff for the Assistant Director and Director positions. Therefore, Plaintiff has offered sufficient evidence to establish her *prima facie* case.

### b. Defendants' Rebuttal

By establishing a *prima facie* case, Plaintiff has created a rebuttable "presumption that the employer unlawfully discriminated against [her]." *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. Following the establishment of a *prima facie* case, Defendants must articulate a "legitimate, nondiscriminatory reason" for not promoting Plaintiff. *Id.* at 253, 101 S.Ct. 1089. Defendants need not prove they were actually motivated by the reasons they proffer. *Id.* at 254, 101 S.Ct. 1089. However, "[t]he explanation provided must be legally sufficient to justify a judgment for the defendant." *Id.* at 255. If Defendants meet this burden "the presumption raised by the *prima facie* case is rebutted." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ The Court will first address the 1992 refusal to promote Plaintiff to the Assistant Director of Fiscal Management position. Defendants argue Plaintiff was not promoted because: (1) her experience was narrowly based, with all 15 years in a single agency; (2) Plaintiff had not seized the opportunity to "demonstrate her abilities and aptitude for the Assistant Director's job;" and (3) Plaintiff's interview was not as strong as William Callahan's. (Defs.' Mem. of Law at 8–9). Ultimately, Defendants maintain that Plaintiff was a strong candidate for the position, but that Mr. Callahan was the stronger of the two, and thus, was promoted.

As to Defendants' refusal to promote Plaintiff to the Director of Fiscal Management position in 1994, Defendants argue that William Callahan was promoted instead of Plaintiff because: (1) he had a "very positive reputation with the Division of Budget" where he had several years work experience; (2) he had demonstrated the "broad understanding of a manager" regarding budget and finance issues; and (3) once again, his interview was stronger than Plaintiff's. (Vanderwall Dep. at 42–46; DiBello Aff. ¶ 5). The Court concludes that the Defendants have produced a legitimate, nondiscriminatory reason for not promoting Plaintiff. Thus, Plaintiff's allegations concerning Defendants' refusal to promote her to the position of Assistant Director in 1992 and Director of Fiscal Management in 1994 are rebutted. The burden now shifts back to Plaintiff, who bears the burden of showing, by a preponderance of the evidence, that Defendants' explanations are mere pretext for intentional discrimination. *Hicks,* 509 U.S. at 511, 113 S.Ct. 2742.

### c. Pretext

■ To survive summary judgment, Plaintiff must prove the existence of factual issues demonstrating that Defendants' stated reasons were a pretext for discrimination. *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir. 1985). Plaintiff may do this by proving (1) that Defendants' rebuttal is false; or (2) that her gender motivated, or contributed to, Defendants' decision not to promote her. *Renz v. Grey Advertising,* 135 F.3d 217, 222 (2d Cir.1997). Plaintiff may prove Defendants' proffered reasons are false by showing they are "so ridden with error that [Defendants] could not honestly have relied upon [them]," *Lieberman v. Gant,* 630 F.2d 60, 65 (2d Cir. 1980), or that the stated rebuttal is "implausible, absurd, or unwise." *DeMarco v. Holy Cross High School,* 4 F.3d 166, 171 (2d Cir. 1993).

### i. 1992 Failure to Promote

■ Plaintiff's argument of pretext relies in large part on alleged inconsistencies in Defendants' proffered reasons for hiring William Callahan. (Pl.'s Mem. of Law at 16). Plaintiff first alleges that Defendants are "inconsistent in [their] proffered reasons for hiring Mr. Callahan as Assistant Director over Ms. Marshall as to whether being an 'insider' is an advantage or being an 'outsid-

er' is an advantage." (Pl.'s Mem. of Law at 15–16).

Defendants argue that Ms. Marshall's insider status provided her an ideal position to demonstrate her abilities and aptitude for the Assistant Director's job. (Thomas Dep. at 55–61, 76, 82–84; Dutcher Dep. at 22). Because Mr. Callahan was not so situated, Ms. Marshall had an advantage over him. However, Ms. Marshall, in Defendants' estimation, had not seized the opportunity to demonstrate herself the strongest candidate. (Dutcher Dep. at 22; Thomas Dep. at 55–61, 76, 82–84).

Mr. Callahan, by contrast, was an outsider employed in another area of State government. The interviewers saw Mr. Callahan's broad base of work experience within State government, coordination and oversight of agency budgets, and interagency experience as providing him the management background necessary for the position. (Dutcher Dep. at 23–25; Thomas Dep. at 55–60; Mainello Dep. at 22–24, 30–31). Such explanations are neither "implausible, absurd, or unwise" nor "ridden with error."

Plaintiff next argues that inconsistencies in the deposition testimony of Hanford Thomas, John Mainello, and Raymond Dutcher, who interviewed her for the Assistant Director position in 1992, raises a question with regard to pretext. (Pl.s' Mem. of Law at 16–17). Plaintiff relies on *EEOC v. Ethan Allen*, 44 F.3d 116 (2d Cir.1994), which states that different justifications of an employer's actions may give rise to a genuine issue of fact regarding pretext. Plaintiff's reliance on *Ethan Allen* is inapposite, however. In *Ethan Allen*, the plaintiff's job performance was not initially proffered as a cause for dismissal, but was instead introduced for the first time to rebut plaintiff's *prima facie* case. *Id.* at 120. That is clearly distinguishable from the instant case in which interviewers cite different reasons for a hiring decision. While each member of the panel was impressed by different aspects of Mr. Callahan's experience, they were unanimous in recognizing him as the strongest candidate. Their sworn testimony serves to validate the panel process, not to put their

reasons for promoting Mr. Callahan in question.

Plaintiff next offers affidavits from Glen E. Held and Gino D'Angelo as evidence of pretext. Glen Held, a former State Police Lieutenant, retired from the State Police in 1987. Mr. D'Angelo, the former Director of Fiscal Management, retired from the State Police in 1990. Neither of these individuals played any part in the decision not to promote Ms. Marshall in 1992, nor do either of them have any first hand knowledge of how the decision was made. This Court has recently ruled "that affidavits of persons without personal knowledge of the facts, inadmissable hearsay statements, and conclusory allegations are not sufficient to defeat a properly supported summary judgment motion." *Christopher–Ketchum v. Agway Energy Products*, 988 F.Supp. 610, 615 (N.D.N.Y. 1997) (McAvoy, C.J.); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir.1988). Because it is clear that neither Mr. Held nor Mr. D'Angelo have any personal knowledge of the 1992 decision not to promote Plaintiff, she can not rely upon their affidavits to prove that Defendants' reasons for not promoting her are pretextual.

Plaintiff next offers the Court a confidential internal report written by Plaintiff's former attorney Kim Greene. The Greene Report was commissioned by the State Police to evaluate a class action Title VII sex discrimination claim being contemplated by female employees of the State Police. In March of 1995, the Greene Report was leaked to the press and portions of it were subsequently published.

This Court has already identified the Greene Report as a privileged document. *Marshall v. State of New York Division of State Police*, 952 F.Supp. 103, 107–08 (N.D.N.Y.1997) (McAvoy, C.J.). In the instant case, however, the Court need not concern itself with issues of privilege. Once again, Ms. Greene has no first hand knowledge of the decision making process that denied Ms. Marshall promotion in 1992. The Second Circuit requires that, to have probative value, knowledge set forth in an affidavit be firsthand such that it would be admissible at trial. *H. Sand & Co. v. Airtemp Corp.*,

934 F.2d 450, 454–55 (2d Cir.1991); *Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir.1986). Because Ms. Greene has no firsthand knowledge of the decision not to promote Ms. Marshall in 1992, her affidavit does not demonstrate that Defendants' proffered reasons are false.

The Court now considers Plaintiff's allegation that the interview process for positions with the State Police is "a virtual sham in most cases in that the 'recommended candidate' is always selected for the position." (Pl.'s Mem. of Law at 19). In support of her allegation, Plaintiff offers her experience as a member of an interview panel in 1991. (Pl.'s Aff. ¶ 34). In contrast to Plaintiff's own case, however, the position for which she assisted in the interview process was a newly formed line item in the budget, created for a pre-approved candidate. (Thomas Dep. at 101–02). Even absent such an explanation, Plaintiff has not provided the Court with any specific evidence that her interviews were "a virtual sham." Moreover, Defendants provide the Court with sworn testimony from the three members of the 1992 interview team, all of whom state that no one made an effort to influence their decision in favor of Mr. Callahan or against Ms. Marshall, nor were they told which candidate was to be promoted. (Thomas Dep. at 50–51; Dutcher Dep. at 13, 17; Mainello Dep. at 37–38).

■ Plaintiff need not prove that gender was the sole factor motivating Defendants not to promote her, however. *Fields v. New York State OMRDD*, 115 F.3d 116, 121 (2d Cir.1997). Plaintiff can prevail by showing that her gender was one of the motivating factors that led Defendants to hire Mr. Callahan, notwithstanding the fact that they considered him a stronger candidate. *Cronin v. Aetna Life*, 46 F.3d 196, 203 (2d Cir.1995); *Renz*, 135 F.3d at 223.

Plaintiff offers the alleged conversation between Plaintiff and Hanford Thomas regarding her chances of being promoted to the Assistant Director position as evidence that Defendants were motivated by reasons other than qualifications. Plaintiff alleges she told Thomas that she felt there had never been a "level playing field" with regard to gender in the Division of State Police. (Pl.'s Dep. at 120–24). Plaintiff felt that his would affect her chances of being promoted to the Assistant Director position. (*Id.*). Plaintiff alleges she asked Thomas if she had a realistic chance of being promoted to the Assistant Director position, and he replied it "depended on whether or not they viewed this assistant director's job as a training position for the director's job." (Pl.'s Dep. at 122). Given the concerns she had raised, Plaintiff interpreted Thomas' answer to mean that the State Police would be unwilling to promote a woman to the Director position, and if the Assistant Director position was viewed as a step to that position, she would be denied promotion to the Assistant Director position based on her gender. (*Id.*).

In their moving papers, Defendants do not contest the veracity of Plaintiff's recollection of this statement. Moreover, Thomas concedes that it "sounds reasonable" that such a conversation could have taken place. (Thomas Dep. at 103). Thomas contends, however, that what he may have meant was that a competent manager should consider the future of the division in determining who is the best candidate for a promotion. (*Id.*). The Court finds that given the context of the conversation and the fact that Thomas was one of the decision makers, his alleged statement, which he has not denied, gives rise to a factual issue as to Defendants' motives which must be decided by the trier of fact. *Cronin*, 46 F.3d at 203; *Chambers*, 43 F.3d at 38.

Plaintiff also alleges that "former Directors of Fiscal Management within the State Police have always been promoted to the position from the inside." (Pl.'s Answering Aff. ¶ 44). She argues that Defendants deviated from their established policy because they refused to promote a woman to the Assistant Director position. *See Vergara v. Bentsen*, 868 F.Supp. 581, 592–93 (S.D.N.Y.1994) (holding that failure to follow established procedure gives rise to an issue of fact). Defendants respond that only one individual, Gino D'Angelo, was appointed to the Director's position since 1974. (Def.s' Resp. to Interrogs. ¶ 30). However, the Court notes the admission of Hanford C. Thomas who concedes that the Division

"like[s] to" promote internally. (Thomas Dep. at 107).

Accordingly, the Court denies summary judgment in regard to the 1992 failure to promote claim

#### ii. 1994 Failure to Promote Claim

 For the reasons stated above, the Court will not consider the affidavits of Glen E. Held or Gino D'Angelo in discussing Defendants' failure to promote Plaintiff to Director of Fiscal Management in 1994. Nor will the Court consider the Greene Report. In addressing Plaintiff's claim that the interview process is a virtual sham, the Court notes that Defendants again offer sworn testimony from the three members of the 1994 interview team that no one attempted to influence their decision, nor were they told beforehand who was to be promoted. (Vanderwall Dep. at 20, 41–42; Winslow Aff. at ¶¶ 4, 9; DiBello Aff. at ¶¶ 2, 3, 6).

The Court finds that Plaintiff has provided no evidence to indicate Defendants' reasons for not promoting her to Director of Fiscal Management in 1994 are anything but truthful. Nor has Plaintiff offered proof that her gender motivated, or contributed to, Defendants' decision not to promote her. Accordingly, Plaintiff's 1994 failure to promote claim is dismissed.

#### 3. Plaintiff's Retaliation Claims

Plaintiff alleges that Defendants retaliated against her following the filing of her complaint with the EEOC on April 30, 1993. Plaintiff alleges a number of incidents in support of her claim of retaliation. Plaintiff alleges that Defendants refused to hire her as Director of Fiscal Management in 1994. (Pl.'s Answering Aff. ¶¶ 30, 31). Plaintiff also alleges that Defendants exhibited a pattern of behavior that deliberately isolated her from other members of her unit, and excluded her from assignments she should have been included in. (Pl.'s Answering Aff. ¶ 31).

Specifically, Plaintiff alleges that: (1) on seven occasions between the spring of 1993, and October, 1994, she was excluded from meetings or not given adequate notice to prepare for a meeting; (2) in January of 1994 she was given a performance evaluation which assigned her new supervisory duties that her superiors did not help her implement; (3) in June 1994, she was not asked to cover the office when then-Assistant Director Callahan went on vacation; (4) in the spring of 1995, following her appointment to the Assistant Director position, Director Callahan filled an opening in the department without consulting her; (5) in March of 1994 she was not given adequate notice to prepare an organizational chart for the Payroll Unit; and (6) in June of 1994 William Callahan failed to brief her on two issues he had been instructed to go over with her. (Pl.'s Answering Aff. ¶ 31(i)–(vii)).

Similar to sex discrimination claims, retaliation claims also employ a burden shifting analysis. *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980). This analysis first requires that Plaintiff state a *prima facie* case of retaliation. The burden then shifts to the Defendants to articulate some legitimate, non-retaliatory reason for the adverse employment action. *James*, 843 F.Supp. at 825. If Defendants meet this burden, an opportunity is afforded Plaintiff to prove that the proffered reasons are pretext for retaliatory action. *Id.* at 827.

It is well-settled that a finding of unlawful retaliation generally does not depend on the merits of the underlying discrimination complaint. *Davis v. State Univ. of New York*, 802 F.2d 638, 642 (2d Cir.1986). In light of these considerations the Court considers Plaintiff's claims of retaliation.

#### a. *Prima Facie Case*

 To state a *prima facie* case of retaliation, Plaintiff must establish: (1) that she participated in a protected activity known to defendant; (2) that her employer took adverse employment action against her; and (3) there exists a causal link between the protected activity and the adverse employment action. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996). Plaintiff meets the first element by filing her EEOC complaint.

To prove adverse employment action and satisfy the second element, Plaintiff must show that the alleged retaliatory action "clearly affected the terms, privileges, duration, or conditions of [her] employment." *Rooney v. Witco Corp.*, 722 F.Supp. 1040, 1046 (S.D.N.Y.1989). Plaintiff satisfies the second element as to Defendants' failure to promote her to the Director of Fiscal Management position in 1994 because failure to promote affects the terms, privileges, and conditions of her employment. *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997).

However, the Court finds that none of the other incidents alleged by Plaintiff rise to the level of adverse employment action. The fact that Plaintiff was displeased when not asked to attend meetings or cover the office does not comprise an adverse employment act. *Blackie v. State of Maine*, 75 F.3d 716, 725 (1st Cir.1996). Not being given what she perceived to be adequate notice of when a work assignment was due or when a meeting began may have been irritating to Plaintiff, but not every unpleasant matter creates a cause of action. *Wanamaker*, 108 F.3d at 466; *Welsh v. Derwinski*, 14 F.3d 85, 86 (1st Cir.1994). Therefore, the Court will consider only the 1994 failure to promote claim for the remainder of the burden shifting analysis.

Plaintiff must allege sufficient facts to enable a fact finder to infer a causal connection between her complaints and Defendants' failure to promote her to the Director position. *Tomka v. Seiler*, 66 F.3d 1295, 1308 (2d Cir.1995); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). Plaintiff can establish a causal connection by showing that the filing of her complaint with the EEOC was closely followed in time by the retaliatory act. *Davis*, 802 F.2d at 642.

Following the filing of Plaintiff's EEOC complaint on April 30, 1993, the State Police attempted to internalize all complaints of sexual harassment and discrimination. (Pl.'s Answering Aff. ¶¶ 19–21). Shortly thereafter, Plaintiff and five other female employees appeared on national television to discuss their complaints against the State Police on June 1, 1994. (Pl.'s Answering Aff. ¶ 22). This was 28 days before the Director of Fiscal Management position was posted, and approximately two months before Mr. Callahan was hired as Director on August 3, 1994.

These circumstances give rise to an inference of retaliation. Accordingly, Plaintiff has proved her *prima facie* case.

### b. Defendants' Rebuttal

The burden now shifts to Defendants to prove that there is a legitimate, non-retaliatory reason for their actions. Plaintiff alleges that Defendants retaliated against her when they failed to promote her to the position of Director of Finance in 1994. Defendants offer the explanation that Mr. Callahan, the candidate selected for the job, was the most qualified. (DiBello Aff. ¶ 5; Winslow Aff. ¶ 7; Vanderwall Dep. at 45–50). As the Court has already noted, this satisfies the burden of producing "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by [retaliatory] animus." *Burdine*, 450 U.S. at 257, 101 S.Ct. 1089.

### c. Pretext

Plaintiff now bears the burden to prove, by a preponderance of the evidence, that the decision to hire Mr. Callahan was the result of intentional retaliation. *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742. Plaintiff may do this by (1) proving that Defendants' proffered rebuttal is false; or (2) by showing retaliatory animus motivated, or contributed to, Defendants' decision not to promote her. *Renz*, 135 F.3d at 222.

The Court finds that Plaintiff has offered no evidence that Defendants' proffered rebuttal is false. As previously mentioned, Defendants have provided sworn testimony from all three members of the committee who interviewed Plaintiff for the Director's position in 1994. All three aver that Mr. Callahan was the most qualified candidate, that no one attempted to influence their decision beforehand, and that Plaintiff's gender was never discussed or considered. (Vanderwall Dep. at 41–46; Winslow Aff. ¶¶ 4, 8, 9;

204

DiBello Aff. ¶¶ 3–6). Plaintiff offers the Court nothing to counter this sworn testimony. In fact, Plaintiff herself admits the interview process for the Director's position was fair. (Pl.'s Dep. at 205–07).

Based on the record, a rational finder of fact could not conclude that Defendants' refusal to promote Plaintiff to Director in 1994 was an act of intentional retaliation. The Court also finds that Plaintiff has offered no evidence that retaliatory animus motivated, or contributed to, Defendants' decision not to promote her. Accordingly, Plaintiff's retaliation claims are dismissed in their entirety.

## III. CONCLUSION

For all the foregoing reasons, it is hereby **ORDERED,** that Defendants' motion for Summary Judgment is **GRANTED IN PART.** Plaintiff's Title VII claim is **DISMISSED** as to her 1994 Failure to Promote Claim. Plaintiff's 1992 Failure to Promote Claim is **NOT DISMISSED.** Plaintiff's Title VII Retaliation Claim is **DISMISSED** in its entirety.

**IT IS SO ORDERED.**