Steve KAUFMAN, Plaintiff–Counter–
Defendant–Appellee,

v.

CHALK & VERMILION FINE ARTS,
LLC, doing business as Martin Law-
rence Galleries, Defendant–Counter–
Claimant–Appellant.

Docket No. 01–7202.

United States Court of Appeals,
Second Circuit.

Jan. 11, 2002.

Andrew J. Goodman; Guy R. Fairstein, of counsel, Kurzman, Eisenberg, Corbin, Lever & Goodman, LLP, White Plains, NY, for Appellant.

Stanley S. Zinner, Greene & Zinner, P.C., White Plains, NY, for Appellee.

Present WALKER, Chief Judge, POOLER and KATZMANN, Circuit Judges.

### SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of said district court be and it hereby is **AFFIRMED.**

Plaintiff–Appellee Steve Kaufman, a successful pop artist, sued Chalk & Vermilion Fine Arts, LLC ("Chalk"), an art distributor, over a variety of claims involving breach of contract and conversion of artwork on consignment. After a jury trial, Kaufman prevailed on all claims and received a judgment ordering damages of $875,158, the return of his undamaged artwork on consignment, and the incineration of his damaged artwork. Chalk asserts that (1) it was improperly prevented from arguing to the jury that it owned the artwork as a result of a bankruptcy reorganization plan, (2) the finding that Chalk diminished the value of Kaufman's artwork in violation of the implied covenant of good faith in their contract should have been reversed because the damages were too speculative, and (3) it now owns the damaged artwork because it will have payed under the judgment the full amount that it would have been required to pay under the contract. The district court rejected all of these arguments and we affirm.

Under a sale and distribution agreement between Martin Lawrence Limited Editions, Inc. ("old MLLE") and Kaufman, old MLLE purchased the first 100 pieces of

each edition and then accepted the rest of each edition on consignment. In the 90 days prior to its filing of a bankruptcy petition under Chapter 11 on Dec. 17, 1996, old MLLE attempted to transfer artwork it had on consignment out of its warehouse and into a third-party warehouse to ensure that the artists were not involved in the bankruptcy litigation. Although Kaufman's consigned artwork was moved into a third-party's trucks, the space was rented in old MLLE's name. When the bankruptcy petition was filed, the return of the artwork to the artists was disclosed and the estate representative reserved the right to attempt to avoid the prepetition transfers of artwork as preferential transfers. The estate did not attempt to avoid the transfers; after the petition, old MLLE paid the warehouses $20,000, and the artwork was transferred back to old MLLE's warehouse to be sold during the holiday season. As part of the bankruptcy reorganization plan, Chalk acquired all of old MLLE's assets at auction and reorganized its galleries as a wholly owned subsidiary ("new MLLE"). Kaufman did not participate in the bankruptcy litigation. New MLLE continued to sell Kaufman's artwork under terms similar to the old arrangement.

When Kaufman visited new MLLE's warehouse in August 1998, he found that some of his artwork was damaged, apparently by the storage conditions. In response to Kaufman's complaints, new MLLE claimed that it was not responsible for the damage to the art. It also asserted for the first time that all of the artwork, regardless of whether it had been on consignment to old MLLE, now belonged to new MLLE as a result of the bankruptcy plan. In addition to refusing to allow Kaufman to reclaim his art, new MLLE also began to sell Kaufman's artwork in regularly scheduled auctions and did not pay any consignment fees after November 1998.

 We are unpersuaded by Chalk's argument that, as a result of the bankruptcy reorganization plan, the artwork became part of the bankruptcy estate and hence Chalk's property. The bankruptcy estate, defined expansively in 11 U.S.C. § 541(a)(1), consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." Because the Bankruptcy Code does not define "interests in property," state law controls. See, e.g., Barnhill v. Johnson, 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). Kaufman argues that under California law, old MLLE had bare legal title and that he retained the entire equitable beneficial interest in his consigned artwork. See Cal. Civ.Code § 1738 et seq. (the California Consignment of Fine Art law). On appeal, Chalk does not dispute Kaufman's substantive claim but only argues that it is procedurally barred. Specifically, Chalk argues that Kaufman's claim could only be properly brought before the bankruptcy court and that he is now barred by estoppel and res judicata from litigating the issue.

The dispute over whether Kaufman's consigned art was part of the estate could have been litigated in the bankruptcy court and Kaufman would have won. A host of cases dealing with trusts establish that where a bankruptcy estate holds property in trust for another, and the trust res is clearly established, the sole action that the estate can take is to transfer the trust corpus to its beneficial owner. See, e.g., Begier v. IRS, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990); Mid–Atlantic Supply, Inc. of Va. v. Three Rivers Aluminum Co., 790 F.2d 1121 (4th Cir.1986). Because the debtor did not have a claim to the beneficial interest of the trust res, neither does the bankruptcy estate. Chalk argues

that *Johnson v. Finnman,* 960 F.2d 396 (4th Cir.1992), requires that beneficiaries of trusts bring claims in bankruptcy court so the trust res can be distinguished from non-trust property. Chalk's argument is unpersuasive in this case where, unlike in *Johnson,* the body of the trust was clearly identified when the artwork was moved to the third-party storage facility before the bankruptcy proceedings began. It was clear to everyone involved that the artwork had been identified as Kaufman's and returned to old MLLE on consignment. Crucially, the joint disclosure specified that the estate representative reserved the right to attempt to avoid the prepetition transfers of artwork as preferential transfers. In the absence of such an attempted avoidance, Kaufman had no reason to begin litigation.

■■■■ Chalk argues that the evidence that Kaufman's artwork was diminished in value by the auctions was insufficient, as a matter of law, to support the jury's damages award. Motions for judgment as a matter of law are reviewed de novo. *EEOC v. Ethan Allen, Inc.,* 44 F.3d 116, 119 (2d Cir.1994). Although Chalk is correct that in California damages must be shown with a reasonable degree of certainty, *GHK Assocs. v. Mayer Group, Inc.,* 224 Cal.App.3d 856, 274 Cal.Rptr. 168 (Cal Ct. App.2d Dist.1990); Cal. Civ.Code § 3301, we are not persuaded by its assertion that the diminution of value damages could only have been derived from guesswork. Under California law, "[w]here the *fact* of damages is certain, the amount of damages need not be calculated with absolute certainty. The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." 274 Cal.Rptr. at 179 (emphasis in original; citations omitted). Moreover, when the defendant's breach causes the difficulty in measuring damages, the failure to prove the amount of damages with precision cannot be held against the plaintiff. *Id.* Although the evidence that the auctions reduced the value of Kaufman's art did not compel a finding of damages, it certainly supported that finding.

■■■■ Chalk's final argument, that it should receive possession of the damaged artwork, also fails. Under California's Consignment of Fine Art law, Cal. Civ. Code § 1738 *et seq.,* the artwork on consignment to Chalk remained Kaufman's property and Chalk was "responsible for the loss of, or damage to," the artwork. Cal. Civ.Code § 1738.6(c). Kaufman thus had a right to demand the return of the artwork and to receive compensation for the damage and Chalk never obtained a right to keep the artwork.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**